# Barton v. Thaw, Appellant.

*Real property—Rule against perpetuities—Options—Construction—Intention—Void option—Cloud on title—Equity.*

1. The rule against perpetuities is aimed at the suspension of alienation by compelling such a limitation of future interests as will require them to vest, if at all, within a certain time. The rule promotes alienability by destroying future interests and is the most important restraint which the law places upon the right to create future interests.

2. The rule against perpetuities is not a rule of construction but a peremptory command of law. Its object is to defeat intention,. and a contract providing for the creation of a future interest in property is first to be construed as if the rule did not exist and then to the provision so construed, the rule applies.

3. An option is a unilateral agreement binding upon the optionor from the date of its execution, but it does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee; it is not a sale but a right of election in the party taking the option to exercise the privilege of purchase and only when that privilege has been exercised by acceptance in the manner specified in the instrument creating the option does it become an absolute contract binding upon both parties.

4. Where the event upon which an estate is to arise, such as the acceptance of an option to purchase, is so uncertain that it may transpire at some indefinite time in the future, or may never transpire at all, the interest created by the option is not vested but contingent and within the rule against perpetuities.

5. A bill in equity to remove a cloud upon title alleged that plaintiffs were the owners of certain land; that their predecessors in title had granted the coal underlying such land, by a deed containing a covenant that in case the grantee, his heirs or assigns "should at any future time whatsoever desire to purchase any of said land in fee simple, then the said parties of the first part for themselves, their heirs or assigns hereby covenant and agree to sell the same to the said parties of the second part, their heirs or assigns at a price not exceeding $100 per acre"; that defendants were the successors in title of the grantees of such deed; that the said covenant was void but was a cloud on the plaintiffs' title, and prayed that such covenant be cancelled. The court after hearing on bill and answer decided that the covenant was but an option to purchase, which under its terms, could be exercised at any time in the future, and was void, as being in violation of the rule against perpetuities and awarded the relief prayed for. *Held,* no error.

Argued May 11, 1914. Appeal, No. 306, Jan. T., 1913, by defendants, from decree of C. P., Fayette Co., No. 673, in Equity, removing cloud upon title on bill in equity in case of William Barton, Priscilla King and Harriet Coffman v. Benjamin Thaw, Thomas Chalmers Darsie and William Glyde Wilkins, Trustees of the "Coke Trust" under the Will of William Thaw, De-

ceased.  Before BROWN, MESTREZAT, POTTER, ELKIN and
STEWART, JJ.   Affirmed.

Bill in equity to remove a cloud upon title.  From the
record it appeared that the common source of title was
Joseph Barton, whose children as heirs at law are plain-
tiffs in the bill.   Joseph Barton in May, 1881, conveyed
the coal and other minerals underlying the land in ques-
tion to J. M. Thompson and John K. Ewing, who one
month later conveyed the same to William Thaw.   The
deed to Thompson and Ewing, and likewise the deed to
Thaw, contained the following covenant:

"And in case the said parties of the second part, their
heirs or assigns, should at any future time whatsoever
desire to purchase any of said land in fee simple, then
the said parties of the first part, for themselves, their
heirs or assigns, hereby covenant and agree to sell and
convey the same to the said parties of the second part,
their heirs or assigns, at a price not exceeding one hun-
dred dollars per acre."

The option to purchase the surface land was never
exercised in the lifetime of Barton or of Thaw, nor was
any attempt made at any time to exercise the option to
purchase.

On hearing on bill and answer, VAN SWEARINGEN, J.,
filed an opinion in part as follows:

This is a bill in equity to remove a cloud from title.
The land in question is subject to an outstanding option
to purchase, which, it is alleged, is of no binding effect
on the land, being in violation of the rule against per-
petuities.   We are asked to adjudge and decree that
this option or right to purchase is null and void, and
to direct a cancellation thereof, and to have a memo-
randum of the decree entered upon the margin of the
record of the deeds wherein said option is contained.
The case has been submitted for the decision of the
court upon bill and answer.

It is conceded by counsel that the case presents for

the first time to the courts of Pennsylvania the question
whether an option or right to purchase land, unlimited
in point of time, violates the rule against perpetuities,
and therefore is void and inoperative as against the
land. As commonly understood, although not techni-
cally exact, a perpetuity is something which may last
forever, and the rule against perpetuities is a rule that
prevents certain existing conditions from continuing
for an indefinite period. The legal significance thereof
will appear more fully as we proceed. The rule is aimed
at the suspension of alienation of property, compelling
such a limitation of future interests as will require them
to vest, if at all, within a certain time. The rule pro-
motes alienability by destroying future interests. Alien-
ability is its object, the destruction of future interests
is the means of obtaining that object. Public policy is
against the tying up of property, and it uses the rule
against perpetuities as a knife to cut out the limita-
tions, which, if they were allowed to take effect, would
produce the consequences which are to be avoided. The
rule against perpetuities first took form in England in
the discussion of cases arising on executory devises of
chattels real, and first was suggested at bar in 1616,
although the word "perpetuity" had appeared in the
English reports as early as 1595. At first the validity
of contingent interests depended on the nature of the
contingency upon which they were limited to take effect,
and no question as to the remoteness of a limitation of a
freehold estate arose until 1664. Lord Chancellor Not-
tingham, in 1681, in the Duke of Norfolk's Case, 3 Ch.
Cas., 1, established the points (1) that the validity or
invalidity of the future interest depended on its remote-
ness, and not on the nature of the contingency, and (2)
that the contingency was required to occur within a life
or lives in being. Subsequently the limits within which
the contingency must occur were extended (1) to cover
the time necessary for the birth of a posthumous child,
where gestation actually occurs, as every life is to be

considered as beginning at the time of conception, then (2) twenty-one years were added to provide for the minority of children in esse at the expiration of the life estate. Later the consideration of minority was lost sight of, and the period of twenty-one years was allowed in gross, without reference to an existing minority. The rule was developed entirely at common law. It was. brought to America as part of the common law of England, and is imbedded in the common law of Pennsylvania. Foulke on Rule against Perpetuities, Chap. 15. Ownership of property does not carry with it the right to dispose of that property to any person and upon any contingency that the owner may desire to name. The law, for reasons of public policy, still imposes some restraints upon the right to dispose of property.

The rule against perpetuities is by far the most important restraint which the law places upon the right to create future interests. It is fundamental that the rule deals only with future estates. No present interest, whether alienable or not, is objectionable under the rule against perpetuities, although restraints upon the alienation of present interests may be prohibited by other rules of law. 30 Cyc. 1466. The remoteness against which the rule is directed is remoteness in the commencement or first taking effect of limitations, and not in the cesser or determination of them. Lewis on Perpetuities, 144; Bender v. Bender, 225 Pa. 434.

In recent years some features of the rule against perpetuities have been regulated by statute, but in no manner affecting this case. "Apart from statutory changes the rule is that no future interest in property shall be created which must not necessarily vest within twenty-one years, exclusive of periods of gestation, after lives in being. The evolution of the rule was probably due primarily to the desire of the courts to prevent property from being inalienable. If future interests in property may be created in favor of persons not in being, a title to the property cannot be made; it is taken out of com-

merce; the rule therefore restrains, within limits, the creation of such interests." 30 Cyc. 1467. "It is not enough that the future interest may, or even that it will in all probability, vest within the limits. It must necessarily so vest." 30 Cyc. 1483. "It was the indestructibility, not only of springing and shifting uses, and of executory devises, but also of future trusts, which forced upon the judges the rule against perpetuities, in order to set bounds to the remoteness of not only legal but equitable limitations; and it acts upon perpetuities wherever they appear, except in conveyances in mortmain, or to charitable uses. A perfect definition of a perpetuity has not been given, and the nearest approach to it is found in Lewis on Perpetuities, ch. 12, where it is said to be a future limitation, whether executory or by way of remainder, and of real or personal property, which is not to vest till after the expiration of, or which will not necessarily vest within, the period prescribed by law for the creation of future estates, and which is not destructible by the person for the time being entitled to the property subject to the future limitation, except with the concurrence of the person interested in the contingent event." Hillyard v. Miller, 10 Pa. 326; Mifflin's App., 121 Pa. 205. "A perpetuity may be defined to be a future limitation, restraining the owner of the estate from aliening the fee simple of the property discharged of such future use or estate before the event is determined or the period is arrived when such future use or estate is to arise." 1 Sanders on Uses and Trusts, 196. "Perpetuities are grants of property wherein the vesting of an estate or interest is unlawfully postponed; and they are called perpetuities not because the grant, as written, would actually make them perpetual, but because they transgress the limits which the law has set in restraint of grants that tend to a perpetual suspense of the title, or of its vesting. The law allows the vesting of an estate or interest, or the power of alienation, to be postponed for the period of lives in being, and twenty-

one years and nine months thereafter; and all restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints, and therefore as void, and consequently the estates or interests dependent upon them are void, and nothing is denounced by the law as a perpetuity that does not transgress this rule." Philadelphia v. Girard, 45 Pa. 9; Johnston's Est., 185 Pa. 179; Gerber's Est., 196 Pa. 366. "Every executory estate which might, in any event, transgress this limit, will from its commencement be absolutely void. When a gift is infected with the vice of its possibly exceeding the prescribed limit, it is at once and altogether void, both at law and in equity." Williams on Real Property (6th Am. Ed.), 319. "A limitation which transgresses the rule against perpetuities is void altogether, differing in this respect from a provision for accumulation contrary to the statute, which is void only for the excess." Leisenring's Est., 237 Pa. 60. "Such future estates are void in their creation." Coggins' Appeal, 124 Pa. 10. "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." Gray on Rule against Perpetuities (2nd Ed.), sec. 629; Gerber's Est., 196 Pa. 366; Bender v. Bender, 225 Pa. 434. "We must be careful not to strain the law so as to avoid this rule. It is founded upon a sound principle of public policy and should be rigidly enforced." Coggins' App., 124 Pa. 10. "Every executory limitation is too remote, and is therefore void under the rule, unless, at the date when the instrument creating it goes into effect, it is apparent that the future estate thereby created must necessarily vest within the limits prescribed by the rule. The mere fact that the estate may possibly vest within the period,

or even that it will in all probability do so, is not sufficient; in fact the slightest possibility that the period preceding the vesting of the estate will continue beyond the limit prescribed by the rule is sufficient to invalidate the limitation." 16 Pepper & Lewis' Dig. Decis., c. 27020.

"When lives cannot be taken as a measure, the perpetuity period is twenty-one years." Goodwin on Real Property, 280. "The period of twenty-one years may be taken in gross, that is, limited simply as a space of time, without reference to any minority, and without being preceded by a life or lives in being." Foulke on Rule against Perpetuities, sec. 340. "If an absolute term is taken, and no anterior term for a life in being is referred to, such absolute term cannot be longer than twenty-one years." Perry on Trusts, 349. "As to the time within which an executory estate or interest must arise, it is evident that some time limit must be fixed, for if an unlimited time were allowed for the creation of these future and indestructible estates the alienation of lands might be henceforward forever prevented by the innumerable future estates which the caprice or vanity of some owners would prompt them to create. A limit has, therefore, been fixed on for the creation of executory interests, and every executory interest which might, under any circumstances, transgress this limit is void altogether. If no lives are fixed on then the term of twenty-one years only is allowed." Williams on Real Property (6th Am. Ed.), 317. "The rule is that where the testator fails to avail himself of lives in being, and adopts a term of years, without reference to any life in being, the term cannot extend beyond twenty-one years from his death." Johnston's Est., 185 Pa. 179. The question was settled in the House of Lords, in England, in Cadell v. Palmer, 7 Bligh 202.

With these principles which support the rule against perpetuities before us, what shall we say of the covenant in the Barton deed? We are of opinion that it

never can be enforced. Counsel for the defendants urge
that the price paid Barton was adequate, that he was
not defrauded into making a bad bargain, that the coal
could have been bought for less money had it not been
desired to insure to the owner thereof ample and suit-
able surface whereon to operate, that when Barton sold
the coal he must have foreseen that the surface might
be required for operating purposes, that the coal with-
out the surface right was not of as much value as it
was with it, that Barton must have foreseen the possi-
bility of a long delay in the mining of the coal and that
this land in his own hands and in the hands of his heirs
or assigns would be subject to this right until such time
as the owner of the coal found it suited his best con-
venience to begin mining operations, and that Barton
demanded and received such a price as would recom-
pense him and his heirs for any lost appreciation in the
value of the surface. But all that can make no differ-
ence. As already seen, the rule against perpetuities is
not a rule of construction, but a peremptory command
of law. It is not, like a rule of construction, a test, more
or less artificial, to determine intention. Its object is
to defeat intention.

It is contended by counsel for the defendants that the
right to purchase now under consideration constituted
a vested interest in the land at the time of the execution
of the Barton deed, which would take the case out of the
rule against perpetuities. The covenant in form is an
option, but without limit as to time of acceptance. "An
option is a unilateral agreement, binding upon the op-
tionor from the date of its execution, but does not become
a contract inter partes in the sense of an absolute con-
tract to convey on the one side and to purchase on the
other until exercised by the optionee." Barnes v. Rea,
219 Pa. 279. "An option is not a sale. It is a right of
election in the party taking the same to exercise a privi-
lege, and only when that privilege has been exercised by
acceptance in the manner specified in the agreement

does it become an absolute contract, binding upon both parties. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. By such an agreement he does not sell his land, nor does he at that time enter into an absolute contract to sell and convey, but he does agree to sell something, that is, the right or privilege to buy at the election or option of the party with whom the agreement is made. The optionee under such an agreement takes, not lands, nor even an absolute agreement that he shall have lands conveyed to him, but he does get something conveyed to him, that is, the right to call for a conveyance of the land if he elects to purchase in the manner specified. The owner parts with his right to sell his lands, except to the second party, for a limited period. It is a unilateral agreement containing the terms and conditions upon which the optionor agrees to sell and convey his land not yet ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other." Barnes v. Rea (No. 2), 219 Pa. 287. Except for the absence of a limit as to time of acceptance, the option to purchase this land constituted a substantial interest in the land which could be conveyed. Kerr v. Day, 14 Pa. 112; People's Street Railway Company v. Spencer, 156 Pa. 85; Strasser v. Steck, 216 Pa. 577. Otherwise it would have been a mere personal contract. But it did not constitute such a vested interest in the land as can escape the rule against perpetuities. To vest means to give an immediate fixed right of present or future enjoyment. Anderson's Dictionary of Law, 1087. An estate is vested in interest when there is a present fixed right of future enjoyment. 2 Bouvier's Law Dictionary (Rawle's Ed.) 1193. It is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment. 40 Cyc. 198, note 93. Vested means accrued, fixed, settled, absolute, having the character or giving the rights of absolute

ownership, not contingent, not subject to be defeated by
a condition precedent. Black's Law Dictionary (2d,
Ed.), 1204. An estate vests in a person who is given a
present and immediate interest, as distinguished from
an interest whose existence depends on a contingency.
To vest is to give a legal or equitable seisin. McClel-
lan's Est., 221 Pa. 261. "An estate is said to be vested
in interest when there is a present fixed right in some
one of future enjoyment of it. It is not vested, but con-
tingent, when either the person who is to enjoy it, or the
event upon which the estate is to arise is uncertain."
Johnson's Est., 185 Pa. 179. In the present case there
is no present fixed right of future enjoyment of any of
this land in anybody, under the option. A privilege to
acquire such right was given by the Barton deed, but no
such right was conveyed thereby. The event upon
which the estate is to arise, to wit, the acceptance of the
option to purchase, is uncertain, being unconfined as to
limit of time. The interest created by this option, there-
fore, is not vested, but contingent, and is within the rule
against perpetuities. In that respect this case differs
from one where the owner of land conveys the coal there-
under, with general mining rights and the right to use
surface for mining purposes, as in Dewey v. Great Lakes
Coal Company, 236 Pa. 498, cited by counsel for the de-
fendants. In a case like that the rights are conveyed by
the deed and vest immediately. There a present fixed
right of future enjoyment is conveyed, although the
right of enjoyment may not be exercised immediately.

Counsel for the defendants contend, finally, that if
any restriction as to time is to be placed on this option
to purchase, it should be only that the right must be
exercised "within a reasonable time," and they urge
that such "reasonable time" in this case ought to be
at least coincident with the life of the "Coke Trust"
under the Thaw will, as noted in our seventh finding of
fact, which has not yet come to an end. But this option
was intended to be unlimited as to time. To undertake

to limit its continuance to "a reasonable time" would be exactly contrary to the intention of the parties, and cannot be done, as will be seen by authorities hereinafter cited. Besides, that would be to treat the rule against perpetuities as a rule of construction, instead of as a peremptory command of law, which, as already seen, we cannot do. It may not be out of place just here to note how carefully the clause in the Thaw will limiting the life of the "Coke Trust" was drawn to avoid the rule against perpetuities, when the testator said: "It is my will that the coke trust hereby created shall continue during the natural lives of all of my children, grandchildren and great grandchildren, if any, who shall be living at the date of my death, and of the survivors or survivor of all said children, grandchildren and great grandchildren, and for and during the further period of twenty-one years next ensuing after the death of the survivor of all said children, grandchildren and great grandchildren, unless said coal shall have been sooner exhausted." It was said by Mr. Justice PAXSON in Smith's App., 88 Pa. 492: "It matters not how many lives there may be so that the candles are all burning at the same time, for the life of the longest liver is but a single life."

While the exact question before us is a new one in Pennsylvania, we are not entirely without authority in other jurisdiction. In England it was held originally by Mr. Justice FRY, in the Court of Chancery, in Birmingham Canal Company v. Cartwright, L. R. 11 Ch. D. 421 (1879), that a covenant to give a certain person, his heirs or assigns, the refusal of purchasing certain mines, upon terms and conditions mentioned, at the happening of an event specified, but unlimited as to the time within which that event should occur, was not obnoxious to the rule against perpetuities, because "the total interest in the land, so to speak, is divided between the covenantor and the covenantee, and they can together at any time alienate the land absolutely." But that decision was ex-

pressly overruled by the Court of Appeals in the later case of London & South Western Railway Company v. Gomm., L. R., 20 Ch. D. 562 (1882), where, by deed dated August 10, 1865, after reciting that it was seized in fee simple of certain land which it no longer needed, the plaintiff company conveyed the land to George Powell, in fee simple, but with a covenant in the deed that Powell, his heirs or assigns, would, at any time thereafter, whenever the land might be required for the railway or the works of the company, and whenever thereunto requested by the company on a six calendar months' notice, upon payment of the price agreed upon, reconvey the land to the company. Powell sold the land to Gomm. In holding that specific performance of the covenant could not be enforced, and after stating that the option could not be construed as requiring an acceptance "within a reasonable time," because that would be contrary to the intention of the parties, but was to be considered as unlimited in point of time, the Master of the Rolls, Sir George Jessel, said: "If then the rule as to remoteness applies to a covenant of this nature, this covenant clearly is bad as extending beyond the period allowed by the rule. Whether the rule applies or not depends upon this, as it appears to me, does or does not the covenant give an interest in the land? If it is a bare or mere personal contract it is of course not obnoxious to the rule, but in that case it is impossible to see how the present defendant can be bound. He did not enter into the contract, but is only a purchaser from Powell who did. If it is a mere personal contract it cannot be enforced against the assignee. Therefore the company must admit that it somehow binds the lands. But if it binds the land it creates an equitable interest in the land. The right to call for a conveyance of the land is an equitable interest or equitable estate. In the ordinary case of a contract for purchase there is no doubt about this, and an option for repurchase is not different in its nature. A person exercising the option

has to do two things, he has to give notice of his intention to purchase, and to pay the purchase-money; but as far as the man who is liable to convey is concerned, his estate or interest is taken away from him without his consent, and the right to take it away being vested in another, the covenant giving the option must give that other an interest in the land. It appears to me therefore that this covenant plainly gives the company an interest in the land, and as regards remoteness there is no distinction that I know of, unless the case falls within one of the recognized exceptions, such as charities, between one kind of equitable interest and another kind of equitable interest. In all cases they must take effect as against the owners of the land within a prescribed period. It was suggested that the rule has no application to any case of contract, but in my opinion the mode in which the interest is created is immaterial. Whether it is by devise or voluntary gift or contract can make no difference." In a concurring opinion, Sir JAMES HANNEN said: "I must say that it appears to me to be a startling proposition that the power to require a conveyance of land at a future time does not create any interest in that land. If it does create such an interest, then it appears to me to be perfectly clear that the covenant in this case violates the rule against perpetuity. This covenant plainly would restrain the future owner from alienating the estate to anybody he pleases, it restricts him to aliening it to the railway company in the event of the company exercising their option." Lord Justice LINDLEY, also concurring, said: "I agree with the observations made by the other members of the court, that this covenant creates an interest in land and is void for remoteness."

As approving and amplifying the rule laid down in the Gomm case above discussed, see Trevelyan v. Trevelyan, 53 L. T. 853; Woodal v. Clifton, 2 Ch. D. 257.

In at least two cases in the United States the Gomm case has been cited with approval and been followed,

and in no case to which our attention has been called, or which we have been able to find, either here or elsewhere, has the principle established in the Gomm case been criticised. In Winsor v. Mills, in the Supreme Judicial Court of Massachusetts (1892), 157 Mass. 362 (32 N. E. Repr. 352), there was an action to have a trust deed declared void on the ground that it was violative of the rule against perpetuities, which was a proceeding much like the one now before us. It was held there that an agreement which gave to the defendant, and his heirs and assigns, a right to purchase a portion of land, at fifty cents per square foot, at any time before it otherwise should be sold or disposed of in accordance with the agreement, provided for the possible creation of an estate in lands at some time in the distant future, and clearly came within the rule against perpetuities. In delivering the opinion of the court Mr. Justice KNOWL-TON said : "The mere fact that a contingent interest may be released by persons in being, and that a good title may thus be made, is not enough to take the case out of the rule, if the estate cannot be aliened by those having vested interests in it, because a possible future interest is created which may not vest within the time fixed by law," citing the Gomm case, and Gray on the Rule against Perpetuities, 198. "Undoubtedly," said the court, "the fact that the holders of vested interests cannot convey tends to create a perpetuity." In Starcher v. Duty, in the Supreme Court of Appeals of West Virginia (1907), 61 W. Va. 373 [56 S. E. Repr. 524, 9 L. R. A. (N. S.) 913], there was an action to compel specific performance of an option contract to sell real estate. It was held that the contract, made originally for one year, and providing for its extension for another year, and from year to year, by the payment of a stipulated sum annually, was void by the rule against perpetuities. In considering the case Judge MILLER said : "It is claimed that this contract partakes of the nature of lease contracts. The answer to this argument, how-

ever, is that leases of land like those considered in the
authorities cited create vested estates in the lessees, and
the covenant for perpetual renewal is one which runs
with the land, without any restraint upon the right to
alienation by the lessor of his property subject to the
lease, and hence the authorities relied on are inappli-
cable." After referring to the Gomm case at some
length, and to various definitions of a perpetuity, and
citing the Massachusetts case, Judge MILLER continued:
"Where a contract raises an equitable right in property
which the obligee can enforce in chancery by a decree
for specific performance, such equitable right is subject
to the rule against perpetuities. The mere fact that a
contingent interest may be released by the persons in
being, and that a good title may thus be made, is not
enough to take the case out of the rule. Unless, there-
fore, we can read into this contract some terms of limi-
tation requiring the optionees to exercise the right to
take the property within some reasonable time, not too
remote, it is clearly within the rule, and must be de-
clared void. To attempt this would be to make a new
contract for the parties, for they have provided that the
option may be extended annually to an indefinite period,
and may be to a time beyond which the rule against
perpetuities will not allow. The contract therefore is
illegal, and was void from its very inception, and every-
thing done by either of the parties designed to carry
the contract into effect which is auxiliary thereto must
be considered as unauthorized and inoperative."

According to the terms of the option in the present
case the desire of the parties of the second part thereto,
their heirs or assigns, to purchase any of the land men-
tioned, in fee simple, may be exercised by them at "any
future time whatsoever." By its terms the option may
be accepted, as stated by counsel for the plaintiffs in
their brief, at any time "before the sun grows cold, and
the stars are old, and the leaves of the judgment book
unfold." The time is limited only by the confines of

eternity. We cannot conceive of a more violent breach of the rule against perpetuities. Such an impress on land ought not to be sustained, and it cannot be. It isolates the property. It takes it out of commerce. It removed it from the market. It halts improvements. It prevents the land from answering to the needs of growing communities. No homes can be built or towns laid out on land so encumbered, because the land always remains subject to be taken under the option. It is not a matter which affects the rights of individuals only. The entire community is interested. The welfare of the public is at stake. It is contrary to the well settled public policy of the state that such an option or right to purchase land should be held to be good. It was for the express purpose of destroying such serious hindrances to material and social prosperity and progress that the rule against perpetuities was brought forth. And the rule must be rigidly enforced. In Coggins' App., 124 Pa. 10, Mr. Chief Justice PAXSON designates the rule against perpetuities as "a rule of property, founded upon the highest considerations of public policy, and too firmly imbedded in our system of jurisprudence to be disturbed save by an act of assembly." We, therefore, reach the following conclusions of law:

1. The option contract contained in the deed from Joseph Barton to Jasper M. Thompson and John K. Ewing that "in case the said parties of the second part, their heirs or assigns, should at any future time whatsoever desire to purchase any of said land in fee simple, then the said parties of the first part, for themselves, their heirs or assigns, hereby covenant and agree to sell and convey the same to the said parties of the second part, their heirs or assigns, at a price not exceeding one hundred dollars per acre," being without limit of time within which its terms shall be accepted and the rights attempted to be given thereby shall be exercised, is null and void, as against the land, and was so from the time of its execution, and no legal rights which can be en-

forced against the land passed by virtue thereof from the said Joseph Barton to the said Jasper M. Thompson and John K. Ewing, or from the said Jasper M. Thompson and John K. Ewing to the said William Thaw.

2. In order that an option of this kind, made without reference to lives in being, may have a binding effect upon the land, an acceptance of it must be required by its terms within a period of twenty-one years from the date of its creation, otherwise it is void ab initio.

3. The option or right to purchase in this case constitutes a cloud upon the title of the plaintiffs which they are entitled in equity to have removed by cancellation.

The court after hearing on bill and answer, awarded the relief prayed for. Defendants appealed.

*Errors assigned* were in dismissing exceptions to the chancellor's conclusions of law and the decree of the court.

*Gordon Fisher,* for appellants.—The defendants acquired a vested interest in the land to which the rule against perpetuities does not apply: Johnston's Est., 185 Pa. 179; Strasser v. Steck, 216 Pa. 577; People's Street Railway Company v. Spencer, 156 Pa. 85; Kountz's Est., 213 Pa. 390; Stewart v. Neely, 139 Pa. 309.

The option to purchase does not suspend the power of alienation: Dewey v. Coal Company, 236 Pa. 498; Turner v. Reynolds, 23 Pa. 199; Strickhouser v. York County Iron Company, 1 York 46; Kellow v. Jory, 141 Pa. 144; Birmingham Canal Company v. Cartwright, L. R. 11 Ch. D. 421; London & Southwestern Railway Company v. Gomm, L. R. 20 Ch. D. 562; Winsor v. Mills, 157 Mass. 362 (32 N. E. Repr. 352); Starcher v. Duty, 61 W. Va. 373 (56 S. E. Repr. 524).

*W. Russell Carr,* of *Carr & Carr,* for appellees.—The defendants have no vested interest in the property. All that they have is a bare privilege which may never grow into a right of possession or enjoyment at any future time whatever: McClellan's Est., 221 Pa. 261; Johnston's Est., 185 Pa. 179; Philadelphia v. Girard, 45 Pa. 9; Winsor v. Mills, 157 Mass. 362 (32 N. E. Repr. 352); Turner v. Reynolds, 23 Pa. 199; Woodal v. Clifton, L. R. (1905) 2 Ch. D. 257; Coggin's App., 124 Pa. 10; Long's Est., 228 Pa. 594.

OPINION BY MR. JUSTICE ELKIN, July 1, 1914:

The learned court below has given such convincing reasons for the conclusions upon which the decree in the present case was based, that we can add nothing of value to the discussion of the legal principles involved. The covenant in question was declared to be void because in violation of the rule against perpetuities. We quite agree with the learned court below that it would be difficult to conceive any case which could be deemed more violative of the rule and a greater hindrance to alienation than the one at bar. The case turns very largely upon the character of the interest in the surface which the optionees took under the covenant. If it was a present, fixed and vested interest in the land the rule against perpetuities would have no application. But is a mere option to purchase land, unlimited as to time and indefinite in duration, which may be exercised in ten years, or in a hundred years, or in a thousand years, or which may never be exercised at all, depending upon the wish or pleasure of the optionee, a present vested interest? To ask this question would seem to answer it. In no proper legal sense can a mere privilege of exercising a future right to purchase be deemed a present vested interest in land. The optionees may never exercise their option, and failing to do so, they would never acquire a vested interest in the land. While the precise question has not been raised or decided in

Pennsylvania, other jurisdictions have considered and decided it adversely to the contention of appellants here. The underlying principles which control in cases of this character were very fully discussed in London & Southwestern Ry. Co. v. Gomm, L. R. 29 Ch. D. 562; Winsor v. Mills, 157 Mass. 362; Starcher v. Duty, 61 W. Va. 373. We think the reasoning of these cases is unanswerable and they are cited with approval by this court.

To elaborate the discussion here would simply mean a reiteration of what has been so well said by the learned court below and this we refrain from doing.

Decree affirmed at cost of appellants.