# Lopes et al. *v.* Greensburg Borough School District, Appellant.

*School law—Property of academy—Trusts and trustees—Convey-*
*ance of land to school district—Consideration—Constitutional law*
*—Arbitrary transfer of property—Violation of contract—Act of*
*April 11, 1862, P. L. 471, 475.*

1. The Act of April 11, 1862, P. L. 471, which authorized trustees of academies, which had received money from the Commonwealth, to convey land to school districts, and provided that the children of any citizens of the county should be admitted to any high school established by means of such property, does not violate the original charter contract of the Greensburg Academy organized under the special Act of March 7, 1810, P. L. 62.

2. Under the Act of 1862, the trustees of the academy had the right to convey vacant land on which a school building had stood years before, to the school district, in consideration of the district erecting a suitable school building on the land, and that, in case the building should be used as a high school, the children of citizens of Westmoreland County should be admitted thereto, if duly qualified, on paying a proper rate of tuition.

3. In such case, the school district cannot, in 1918, abrogate the contract, by resolving that thereafter no nonresident pupils should be admitted into the high school.

4. The Act of 1862 does not undertake to transfer property from trustees of academies to school districts, but only authorizes such transfers, if the trustees consent to do so. It is not therefore unconstitutional and void as an attempt arbitrarily to transfer corporate property, in breach of the contract represented by the corporate charter.

Argued October 1, 1920.  Appeal, No. 154, Oct. T., 1920, by defendant, from decree of C. P. Westmoreland Co., at 1000 in Equity on bill in equity awarding injunction in case of S. T. Lopes et al. v. Greensburg Borough School District.  Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Affirmed.

Bill in equity for injunction.  Before McConnell, P. J,

The opinion of the Supreme Court states the facts.

The court entered a decree awarding a perpetual injunction. Defendant appealed.

*Error assigned,* among others, was decree, quoting it.

*Charles E. Whitten,* with him *C. E. Heller, Paul H. Gaither* and *R. Kirk McConnell,* for appellant.—The provision in the contract, which plaintiff seeks to have enforced, is illegal and void: (a) Because it violates the Constitution of the United States; and (b) the laws of the Commonwealth.

The true rule is that the agents named in the charter for the administration of the charity may not be supplanted, unless it is made to appear that it is impossible to carry out the scheme of the charter: Darmouth College Trustees v. Woodward, 4 Wheaton 518.

Grants to private corporations are contracts, which the legislature cannot impair or change, without the consent of the corporation: Com. v. Cullen, 13 Pa. 133; Brown v. Hummell, 6 Pa. 86; Monon. Nav. Co. v. Com., 6 Pa. 379.

The trustees of the Greensburg academy had no authority to consent to this conveyance, in so far as it attempted to amalgamate the academy with a public high school and to surrender the entire property and control of the academy to a municipal corporation created for the performance of duties incompatible with the lawful conduct of the Greensburg academy: Woddrop v. Weed, 154 Pa. 307; Hickok v. Still, 168 Pa. 155; Unrugh's Est., 248 Pa. 185.

The only basis for the relief prayed for is a contract which is in violation of the Constitution of the United States.

Plaintiff exhibits this unlawful bargain in a court of equity and demands that the court enforce such contract by the process of a mandatory injunction. This will not be done: Johnson v. Hulings, 103 Pa. 498.

*James S. Moorhead,* with him *Robert W. Smith,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, December 31, 1920:

By the Act of March 7, 1810, P. L. 62, there was established in the Borough of Greensburg, Westmoreland County, "an academy or public school for the education of youth in useful arts, sciences and literature," its trustees being thereby created "one body politic," styled "The Trustees of the Greensburg Academy." Eight trustees were named in this charter, and it was therein provided that their successors should be chosen at stated periods by the electors of Westmoreland County. The sum of $2,000 was granted to the trustees out of the public funds, and they were vested with power to take and hold real and personal estate "and the same from time to time to grant, bargain, sell, demise, alien or dispose of, for the use of said academy." The act provides that poor children, not to exceed four at any one time, should be taught gratis. This statute contemplated the founding of an academy or "public school," for the children of Westmoreland County.

By Act of March 30, 1811, P. L. 160, the trustees of the Greensburg academy were authorized to erect buildings for use of the institution, either within the limits of the Borough of Greensburg or in the vicinity thereof, as they might think proper.

By deed dated December 13, 1811, the trustees acquired from one William Best, a tract of land containing one acre and 149.5 perches, situate in Hempfield Township, adjacent to Greensburg Borough. A suitable house was erected on this land, and an academy was there conducted until the year 1850, when the structure was destroyed by fire. The trustees had no funds to put up a new building, so the land lay vacant, and was used for a race track; which condition of affairs continued for some twelve years.

By Act of May 8, 1854, P. L. 617, the common school system was created, and Greensburg Borough, which now includes within its limits the site of the academy building, became a school district.

By Act of April 17, 1861, P. L. 359, the trustees of Greensburg academy were "authorized and empowered to convey by deed, in fee simple, all of the real estate of the aforesaid corporation—to the school district of Greensburg Borough—for purposes of common school education."

By the 16th section of the Act of April 11, 1862, P. L. 471, 475, it was provided that the trustees of any academy, which received money from the Commonwealth for educational purposes, could convey all the property belonging thereto unto the directors of common schools of the district in which the main building thereof might be situated, the deed to be judicially approved; and the act further provided that the children of citizens of the county should be admitted to any high school established by means of such property.

By deed dated May 20, 1862, following the Act of 1862, the trustees of Greensburg academy conveyed its tract of land and transferred "all monies or stocks of, or belonging to, the said trustees," to the Greensburg School District; this deed was duly approved by the proper court, as provided in the last mentioned act.

At the time of the conveyance and transfer to them, and in consideration thereof, the directors of the school district agreed to erect forthwith on the academy land a suitable building for school purposes, and to provide ample and sufficient rooms for the use of the academy, to be used and enjoyed by it, "free of any charge, so long as said trustees should deem it expedient to do so." The deed also contained a provision that in case an academy were not "put into operation and maintenance in said building by said trustees, and a high school should at any time be established by said directors, the children of citizens of Westmoreland County should be admitted

thereto, if duly qualified, on paying to the treasurer of said district the same rate of tuition for each which it shall annually cost said district per student to keep said high school in operation."

Soon after the conveyance was made, the Greensburg district erected a brick schoolhouse, two stories in height, which building yet remains. There was no evidence that the trustees, or others for them, ever conducted an academy in this structure; but a high school was established and occupied the building.

In 1897 a larger building was erected on a part of the same tract of land, and in 1898 the high school moved into this building. The children of the county at large, when properly qualified, have always been admitted to this institution, in accordance with the contract of 1862.

On June 11, 1918, the directors of the school district adopted the following resolution: "Resolved that during the ensuing school term, beginning September 2, 1918, we admit into our high school those nonresident students who attended our schools during the last school term; and that we refuse to admit into our high school any additional nonresident students."

On September 6, 1918, the plaintiffs filed a bill in equity alleging they were citizens of Westmoreland County, residing without the school district of the Borough of Greensburg, in Hempfield Township; that each had children qualified to enter the Greensburg high school, and were prepared to pay the regular tuition fees; but that their children, by reason of the enforcement of the resolution of June 11, 1918, had been denied admission.

On presentation of the bill, with a proper bond, injunction affidavits, etc., the lower court awarded a preliminary injunction, enjoining and restraining the officers of the school district of the Borough of Greensburg from excluding plaintiffs' children from said high school.

The injunction was continued, and, on final hearing, made permanent; whereupon defendant appealed to this court.

After the filing of plaintiffs' bill, numerous other citizens of Westmoreland County, nonresidents of the Greensburg school district, having children qualified to attend the high school, who had been likewise excluded therefrom, were permitted to intervene as plaintiffs and given the same relief as that granted the original plaintiffs.

Both appellant and appellees have signed a stipulation agreeing that the rights of the intervening plaintiffs are identical with those of the original plaintiffs, dispensing with the printing of the several petitions to intervene and the orders of court thereon, etc., also agreeing that the same judgment shall be entered as to all plaintiffs. It is therefore ordered that the judgment entered at the end of this opinion shall apply to all the cases, in accordance with this stipulation.

Appellant contends that the act of assembly, purporting to authorize the conveyance from the trustees to the school directors, and the agreement of transfer and conveyance, so far as the latter undertakes to provide for the admission of children from the county at large to the high school, are unconstitutional breaches of the original charter contract of the academy, and represent an abandonment of a trust; it also contends that the transaction between the trustees of the academy and the school directors is void (at least to the extent indicated) for other reasons, which we shall touch upon during the course of this opinion; and that, since appellees depend on, and had to plead, these alleged invalid warrants of authority to make out their case, the granting of the relief which they prayed for was error.

The court below decided, in an elaborate and scholarly opinion, covering sixty-eight printed pages, that the transaction in question was in no sense void, that the Act of 1862 fully authorized the conveyance, and the

part of the agreement contained therein here sought to be enforced was in accord with that legislation, which was valid in law and had been affirmed in principle by the decision of this court in Barr v. Weld, 24 Pa. 84.

Barr v. Weld is a case where, in 1815, before we had an established common school system, a piece of real estate was deeded, for a nominal consideration, to trustees, "on behalf [of] and in trust for the Utica School-House," "in trust as aforesaid forever." A schoolhouse was forthwith erected on the lot, through privately subscribed funds. In 1839 a new building was put up, and this was used by a school established under the common school system; although the report of the case indicates that the original structure was not so used. In 1852 the trustees of the Utica schoolhouse conveyed the premises in dispute to the "School Directors of Sugargrove, to hold for the same purposes for which the grantors held." Part of the property was subsequently sold by the school directors, and plaintiffs, claiming as heirs of the original grantors, commenced an action of ejectment. On appeal, we decided, affirming the court below, that plaintiffs had no right to maintain ejectment; and that the only remedy for those entitled was an action to enforce the trust. Then we specifically said that the 14th section of the Act of 1836, P. L. 531, authorized the conveyance from the original trustees to the school directors. This act provides that "in all cases where real estate is held by trustees for the general use of the neighborhood, as a schoolhouse, it shall be lawful for said trustees......to convey the same to the school directors aforesaid, and from thenceforth the said [school] board shall hold the said property for the same uses for which it was granted to said trustees." The report indicates that appellants stood upon this statute both in the court below and on appeal. After discussing the Act of 1836, and its effect, the opinion takes up the sale by the school directors to third parties, of part of the land originally conveyed to the former by the trustees; then,

in a new sentence, it is said that the directors are not misapplying the money thus obtained to purposes other than those of the trust. The opinion writer then uses the expression "but, be that as it may," followed by the words, "the plaintiff is not entitled to recover." Appellant urges that this indicates the Supreme Court really stood on the first part of the opinion as ruling the case, and that the latter part, dealing with the Act of 1836, had no governing effect. We do not so understand the report; we understand the opinion as meaning that plaintiff is not entitled to recover, first, because the trust was originally created without any express right to reënter for a breach thereof, and, next, because the trust had not been broken by the conveyance from the trustees, and this last ground is rested upon the Act of 1836. Hence, we think the chancellor, in the case now before us, made no mistake in citing Barr v. Weld as being, in principle, a ruling authority.

As correctly said by the court below: "The Act of 1836, however, did not purport to apply to academies, .......only to community schools,.......; but therefrom it may be concluded that, if it was legally competent for that act to authorize the substitution of school directors for the trustees of property of a neighborhood school, it would also be legally competent for the Act of 1862, on like proper occasion, to do the same thing, with respect to property of an academy held by trustees; if the directors maintained a school of academic grade wherein substantially the same studies were to be pursued, in neither case would the energizing law of the trust itself be thereby altered, or its benefits be taken away from its originally designated beneficiaries."

The opinion of the learned court below continues to so properly state the principles, which govern the case at bar, that we cannot do better than quote therefrom; it says: "This authority, exercisable by the Commonwealth on proper occasions, is predicated, not on any asserted general power residing in the State, to legislate

upon and change the essential nature of the rights of the beneficiaries, which the trust secures them, but rather, upon the paramount right of the sovereign to, by external means, give enforcement to the internal laws of the trust itself, to prevent their falling into desuetude, for the benefit of the beneficiaries, as they were in the trust designated. Statutes, such as the Acts of 1861 or 1862, do not, when properly applicable, undertake, in and of themselves, to effect a transfer—from trustees of an academy to school directors—of title to the property theretofore held by trustees, but only purport to authorize the trustees to do that, if they consent to do so. Without such consent by the trustees being subsequently manifested by the actual making of the authorized transfer, no transfer is effected simply by the statutes alone. The title to the property remains in the hands of the trustees as theretofore, and the control continues to remain there, unless, and until, the trustees conclude to voluntarily relinquish, for an adequate reason, their then existing rights to the newly suggested and authorized administrators of the unaltered trust. The statutes simply mean that, if the trustees desire and consent to a transfer to the designated transferees, the visitorial authority of the State would not regard such act as one constituting a diversion of trust property from the beneficiaries of the trust, but only as being a proper means to secure the operation of the trust for the use of the beneficiaries. Although such argument has been made in this case, yet it is plain to the contrary thereof, that the Commonwealth cannot, by statute, arbitrarily and without adequate cause, take the private property of a private corporation, any more than it could do so with the private property of a natural person, and bestow it on another individual. Something of that kind of arbitrary transfer was unsuccessfully attempted to be done with respect to the corporate property vested in the trustees of the Lebanon Female Seminary. See Lebanon School District v. Lebanon Female Seminary, 22 W. N. C. 65,

wherein, it was decided that such an act, attempting to arbitrarily transfer title, was unconstitutional and void. But situations may arise, wherein the State, exercising its visitorial powers with respect to eleemosynary trusts, and devising means for enforcing the internal rules thereof, may properly act, to the end that the trusts may be given continued efficacy, for the benefit of intended beneficiaries. Such situations may, and frequently do, arise, wherein it is proper for the State to declare, by such statutes as the Acts of 1861 and 1862, that such changes in the mode of administering a trust may be lawfully made—the trust itself in all respects being thereby unimpaired. In this case, the academy building had been burned down, prior to the conveyance, and, apparently, the trustees were then unable to replace it with a new one. In consequence of this, for ten or twelve years prior to the passage of these acts, the execution of the purpose of the trust by the trustees had become dormant. It presented a proper occasion for the State—the trustees consenting—to devise the proper application of external means of restoring the then dormant efficacy of the still existing trust, by authorizing a change of the administrators thereof—with the consent of the trustees; the Acts of 1861 and 1862 were originated by the legislature at the promptings of such a purpose, and for the effecting of such a result."

This is not a case where plaintiffs seek specific performance of a contract like the one in Heckman's Est., 236 Pa. 193; but it is rather in the nature of a proceeding to enforce a charitable trust, taken over by defendants on a stipulation that it should be performed in either of two designated ways, only one of which is now being insisted upon.

No more is it a case like Barton v. Thaw, 246 Pa. 348, where a certain part of an agreement, giving an option, which had never been taken up, was set aside as violating the rule against perpetuities. In the present case, the first method of performing the trust does not seem

to have been acted on; no academy was conducted in the building, but a high school was established there, and the conveyance to the school directors provides, not that the trustees of the academy or the cestuis que trust— the children of the citizens of Westmoreland County— should have an option to force the establishment of a high school, but that, when such a school was established, those children should be admitted to it.

The first method of carrying out the trust—a method other than the one here insisted on—was not comprehended by the Act of 1862, which (although the Act of 1861 is referred to) is the law invoked; but that statute expressly authorized the transfer by the trustees to the school directors, on the very terms now sought to be enforced, namely, those stipulated as the second method for the practical performance of the trust—the admission of the cestuis que trust to the high school, which institution appears by subsequent events to have been in contemplation, and was afterwards established on the land in controversy.

The transfer of the property from the trustees to the school directors was authorized by law, and was in no sense an invalid transaction; the grantees have enjoyed the benefits of a valuable property (estimated by the court below to be worth over $100,000), which the Act of 1862 empowered them to take, and they must fulfill the obligations of the agreement their predecessors entered into under and by authority of that statute.

While it is true that the four poor children referred to in the original charter act of the academy, as having the right to free instruction, are not specially mentioned in the agreement of conveyance to the school directors, their rights are not here involved and need not now be passed upon.

Finally, this case is quite different from the Dartmouth College case (4 Wheaton 518) and others relied on by appellant. Here the State was not only the sovereign authority which granted the charter but also the

financial founder of the institution; and all that has been done was with its consent, but not by its coercion. The Act of 1862, supra, is constitutionally applicable to the facts in the present case, and it, together with the charter Act of 1810, furnishes ample warrant for the transaction sought to be enforced by the plaintiffs, and attacked by the defendant.

It is not necessary to pass specifically upon each of the seventeen assignments of error; such of them as are material we overrule, and those which are not we dismiss.

The decree is affirmed at cost of appellant.