ROBERT J. BORTOLOTTI, trustee,[1] vs. ROBERT F. HAYDEN,
FOURTH.

Barnstable. April 5, 2007. - May 21, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Civil,* Standing, Summary judgment. *Real Property,* Right of first
refusal, Option, Restraint on alienation, Restrictions. *Rule Against
Perpetuities.*

In a civil action concerning the enforceability of a right of first refusal
contained in a deed to certain property, the plaintiff — who had entered
into a purchase and sale agreement to purchase the property at the time
that the defendant attempted to exercise his right of first refusal — had a
cognizable legal interest in the validity of the restrictions he challenged,
and that was enough to confer standing. [196-198]
This court concluded that a right of first refusal contained in a deed to property
was neither void under the rule against perpetuities nor a restriction
constituting an unreasonable restraint on alienation. [198-205]

CIVIL ACTION commenced in the Superior Court Department on
March 17, 2005.

The case was heard by *Robert A. Kane,* J., on motions for
summary judgment, and entry of separate and final judgment
was ordered by *Gary A. Nickerson,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Thomas F. Maffei* (*Scott McConchie* with him) for the
defendant.

*Thomas P. Carpenter* for the plaintiff.

GREANEY, J. In a deed recorded in 1981 at the Barnstable
County registry of deeds, executors under the will of the
defendant's father, Robert F. Hayden,[2] conveyed a parcel of

[1] Of the 3630 Development Trust.
[2] Documents in the record also refer to the defendant's father as Robert F.
Hayden, Sr.; Robert F. Hayden, Jr.; and Robert F. Hayden, Third. We shall in
this opinion refer to the defendant's father as "Hayden."

subdivided land situated "in Barnstable (Cotuit)" to Albert Mattson. A restriction in the deed reserved to the grantor's heirs, executors, administrators, and assigns, a preemptive right to purchase the property on the same terms and conditions contained in any bona fide offer received by, and acceptable to, the grantee, his heirs, executors, administrators, and assigns. The restrictive covenant, which we shall refer to as the right of first refusal, was not limited to a term of years, but was of unlimited duration. The plaintiff filed a verified complaint in the Superior Court seeking a declaration that the right of first refusal violates the rule against perpetuities and is, therefore, void and unenforceable.[3] The defendant contested the rule's applicability and challenged the plaintiff's standing to raise the issue. Considering cross motions for summary judgment, a judge agreed with the plaintiff and entered a judgment declaring the right of first refusal void and unenforceable. Separate and final judgment entered against the defendant. The defendant appealed from the judgment, and we transferred the appeal to this court on our own motion. We now reverse and direct entry of judgment for the defendant.

The following undisputed facts are drawn from the summary judgment record. The subject property, located at 3630 Falmouth Road, Marstons Mills, was part of a larger tract of land originally owned by Hayden. In 1976, Hayden had transferred his ownership in the tract of land to Hayden Land Development Co., Inc. (HLD). Hayden, Mattson, and Robert G. Kesten were partners in a joint venture to develop, operate, and manage a shopping center on a portion of the tract of land, which included the subject property. At the time of his death in 1980, Hayden

---

[3]The plaintiff's verified complaint also sought specific performance in the form of an order compelling the current owner of one lot of the property conveyed by the 1981 deed, Robert G. Kesten, Sr., to convey the lot to the plaintiff rather than the defendant, and sought damages sustained as a result of Kesten's failure to perform under the terms of a fully executed purchase and sale agreement between Kesten and the plaintiff. The plaintiff filed a motion for summary judgment on these claims (which the judge denied), and Kesten filed a cross motion for summary judgment (which the judge also denied). Kesten remains an active party in the Superior Court, but has not joined in the defendant's appeal to this court. Unopposed assertions in the record indicate that Kesten takes no position on the primary issue before us, namely, whether the right of first refusal contained in the 1981 deed is valid and enforceable.

held 565 shares of HLD stock. In order to facilitate the payment of estate taxes, the executors of his estate, in 1981, participated in a stock redemption plan with HLD, by which HLD conveyed four parcels of the subdivided land (lots 93, 94, 95, and 96) to the estate in exchange for 150 shares of HLD. The executors then sold and conveyed the four lots to Mattson. The sale was subject to the following restrictive covenant:

"The grantee of these premises and his heirs, executors, administrators and assigns shall not sell or otherwise dispose of said premises except after first offering the same for sale to the grantors, their heirs and assigns upon the same terms and conditions as those contained in a bona fide offer received by and acceptable to the grantee. In the event of the receipt of such an offer, the grantee shall notify said grantors and shall set forth in full in such notice all the terms and conditions of the said offer in detail and offer to sell the same to said grantors upon the same terms. Within twenty (20) days after the receipt of such notice, said grantors may accept such offer, and upon making the payments required thereby, purchase the premises upon such terms and conditions. In the event that within said 20-day period said grantors do not accept such offer (or shall indicate in writing their intention not to do so), the grantee shall be free to sell the premises to the person making such bona fide offer."

The deed was recorded as document no. 284,458 at the Barnstable County registry of deeds on August 4, 1981. The deed contained a second restriction, not at issue in this appeal, that, with certain stated exceptions, no future use could be made of the property that would in any manner compete with the normal and usual businesses associated with a shopping center. The restrictions contained in the deed were, in part, imposed to protect the value of the larger tract of land owned by HLD, which was subsequently developed as a shopping center, and in part to preserve the economic and sentimental value of the remaining land owned by the Hayden family under trusts created by Hayden's will and under HLD.[4] In 1983, Mattson conveyed

---

[4]In an affidavit submitted in connection with his summary judgment mo-

the four lots to Kesten. The recorded deed states that the property is "subject to the restrictions as set forth in Document No. 284,458."

In 1996, the plaintiff purchased lots 95 and 96 from Kesten. At that time, the defendant and his sisters (as Hayden's heirs) signed two documents entitled "Assent to Sale," which were recorded at the Barnstable County registry of deeds, and which expressly waived the right of first refusal, pursuant to document no. 284,458, with respect to the sale of each lot.

In December, 2004, Kesten and the plaintiff entered into a purchase and sale agreement concerning lot 94. The agreement makes no mention of the right of first refusal contained in document no. 284,458. The time for performance under the agreement originally was January 31, 2005, but Kesten and the plaintiff extended the closing to March 18, 2005. On February 14, the plaintiff's attorney, on behalf of the plaintiff, notified the defendant of the purchase and sale agreement and of the twenty-day period in which he could respond and match the terms and provisions set forth in the agreement. The letter requested, should the defendant choose not to match the offer, that an enclosed "Assent to Sale" be signed and returned to the plaintiff. On or about March 7, the defendant's attorney hand delivered a letter to Kesten's attorney, notifying Kesten of the defendant's intention to purchase the property. Enclosed in the letter was a check for the deposit amount required by the purchase and sale agreement. Kesten accepted the letter and check. The closing, which had been scheduled for March 18, however, never took place. On March 17, the plaintiff commenced this action, and a judge in the Superior Court (a different judge from the one who allowed the plaintiff's motion for summary judgment) allowed the plaintiff's ex parte motion for a memorandum of lis pendens to be recorded against the subject property.

1. We first address the issue of standing. The defendant asserts that the plaintiff may not challenge his proposed purchase of lot 94 from Kesten because the plaintiff is privy neither to

tion, the defendant indicates that, at the time of his father's death, the land was the site of a building moving company owned by his father, the site of an antique store run by his mother, and the site of a building company now owned and operated by the defendant.

that purchase and sale agreement nor to the agreement, recorded as document no. 284,458, in which the right of first refusal is recited. We disagree. The plaintiff had entered into a purchase and sale agreement to purchase the property from Kesten at the time that the defendant attempted to exercise his right of first refusal. The resolution of the contested point presented by his verified complaint, and any resulting declaration, will have a significant impact on his rights. See *Bonan* v. *Boston*, 398 Mass. 315, 320-321 (1986); *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292-293 (1977), and cases cited.

A decision of the Supreme Court of Rhode Island relied on by the defendant, *Brough* v. *Foley*, 525 A.2d 919 (R.I. 1987), is distinguishable. Like the plaintiff in this case, the *Brough* plaintiffs had a fully executory purchase and sale agreement to purchase property that was not honored by the seller due to the exercise of a third-party's right of first refusal. See *id.* at 921. The purchase and sale agreement in the *Brough* case, however, was expressly subject to the condition that the defendant seller would honor the right of first refusal that had previously been granted, and, if the third party chose to purchase the subject property, the seller's agreement with the plaintiffs would become "null and void." *Id.* There was no such contractual provision here.

The record supports the defendant's assertion (and the plaintiff does not argue otherwise) that, regardless of the absence of any express reference to document no. 284,458 in the purchase and sale agreement between the plaintiff and Kesten, the plaintiff was fully aware of the right of first refusal in connection with lot 94 before entering into the agreement. We reject the suggestion that the plaintiff, who proceeded with his plans to purchase the property without regard to his prior knowledge of the right of first refusal, by implication abandoned, or lost, his standing to challenge the restriction's validity. To so hold would discourage third-party offers on property that may be affected by preemptive restrictions of this type and place a would-be purchaser "in the precarious position of being unable to vindicate its contractual rights, while allowing a seller to rely on any spurious claim so long as it implicated a third party's

rights, in order to avoid a contract with impunity." *National Land & Bldg. Corp.* v. *Kazim*, 25 A.D.3d 513, 514 (N.Y. 2006). The plaintiff has a cognizable legal interest in the validity of the restriction he challenges, and that is enough to confer standing. See G. L. c. 231A, § 9 (purpose of G. L. c. 231A is to enable court "to remove, and afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered"). See *Stuart Kingston, Inc.* v. *Robinson*, 596 A.2d 1378, 1383 (Del. 1991) (prospective purchasers challenging third party's exercise of first refusal right "have a concrete and distinct claim and if not permitted to assert it will suffer a direct injury"). We now consider the merits.

2. There are no Massachusetts cases directly addressing whether a right of first refusal contained in a deed, which grants the right to purchase property on the same terms as any bona fide offer that may be acceptable to the grantee in the future, falls within the scope of the rule against perpetuities. In considering the parties' cross motions for summary judgment, the judge looked for guidance to decisions of this court, and of the Appeals Court, addressing options to purchase (a related but, as we shall explain, dissimilar interest); to appellate decisions of other jurisdictions applying the rule against perpetuities to first refusal rights; and to the position taken by the American Law Institute (ALI) in the 1944 Restatement of Property.[5] The judge reasoned that the right of first refusal at issue has a concrete, albeit mild, effect on the alienation of real estate. Based on the public policy against restraints on alienation, and the common-law rule's policy against the remote vesting of property interests, the judge concluded that a right of first refusal is subject to the rule against perpetuities "provided the right fits the definition of an option covered by the common law rule."

As has been stated, the judge ordered the entry of partial

---

[5]Section 413(1) of the Restatement of Property (1944) states:

"A promissory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision that the owner of the estate shall not sell the same without first offering to a designated person the opportunity to meet, with reasonable expedition, any offer received, is valid, unless it violates the rule against perpetuities."

summary judgment declaring the defendant's asserted right to purchase the subject property to be void and unenforceable. We review the entry of summary judgment under well-established standards, to determine whether the successful party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. See *Morrison* v. *Toys "R" Us, Inc.*, 441 Mass. 451, 454 (2004); *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 20-21 (2003); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The defendant contends that there are no material facts in dispute and that the entry of partial summary judgment, and the subsequent entry (by a different judge) of separate and final judgment against him, were incorrect as a matter of law. We agree.

The rule against perpetuities is a doctrine that places a strict limit on how long certain types of property interests may continue. There is no disagreement that, if the right of first refusal fell within the scope of the Uniform Statutory Rule Against Perpetuities, G. L. c. 184A, as appearing in St. 1989, c. 668, § 1 (USRAP), it would be valid pursuant to G. L. c. 184A, § 5, which provides that "a preemptive right in the nature of a right of first refusal in gross with respect to an interest in land or minerals becomes invalid if it is not exercised within thirty years after its creation." The USRAP, however, only applies to interests in land created after June 30, 1990. St. 1989, c. 668, § 2. Prior to that time, Massachusetts adhered to the common-law rule against perpetuities, inserted by St. 1954, c. 641, § 1.[6] The common-law rule is traditionally defined as a

---

[6]General Laws 184A, inserted by St. 1954, c. 641, § 1, effected slight modifications to "ease the harshness of the traditional rule." *Hochberg* v. *Proctor*, 441 Mass. 403, 407 n.10 (2004). Those modifications affect interests in property determined by reference to life estates or "lives in being" or contingent on any person's attaining, or failing to attain, an age in excess of twenty-one years, and are not relevant to our analysis. See St. 1954, c. 641, § 1. See also *Certified Corp.* v. *GTE Prods. Corp.*, 392 Mass. 821, 823 (1984); Young, USRAP to the Rescue: Taming the Rule Against Perpetuities, 73 Mass. L. Rev. 126, 129 (1988) (1954 reform legislation did not "help . . . commercial transactions inadvertently caught by the rule"). The 1954 statute was replaced in its entirety, effective June 30, 1990, with the passage of the Uniform Statutory Rule Against Perpetuities, G. L. c. 184A, as appearing in St. 1989, c. 668, § 1 (USRAP).

rule that "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." J.C. Gray, Rule Against Perpetuities § 201 (4th ed. 1942). See *Certified Corp.* v. *GTE Prods. Corp.*, 392 Mass. 821, 823 (1984). As has been noted, the right of first refusal expressly states that it is binding on the parties' "heirs, executors, administrators and assigns." The restriction is silent with respect to a temporal limitation on the exercise of the right in terms of the lives of the parties or a specific period of years. Because there is no provision for the challenged right to be limited by any life in being at the time of its creation, the period allowed by the rule of perpetuities is twenty-one years commencing from the time the right was conferred on the grantee in 1981. See *id.* It follows that, if the right of first refusal is a property interest to which the common-law rule against perpetuities applies, the interest extends beyond the period allowed by the rule and, by application of the rule, is void.

Our cases make clear that an option to purchase real estate at a fixed price falls within the common-law rule against perpetuities. See *Certified Corp.* v. *GTE Prods. Corp.*, *supra* at 825-826; *Eastman Marble Co.* v. *Vermont Marble Co.*, 236 Mass. 138, 152-153 (1920); *Winsor* v. *Mills*, 157 Mass. 362, 366 (1892). In *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 382 (2004), however, we drew a clear distinction between a right of first refusal, as it is classically understood, and interests this court has considered, in the past, to fall within the rule against perpetuities. Our decision established that "[a] right of first refusal is not an option to purchase property at a certain price, but a limitation on the owner's ability to dispose of property without first offering the property to the holder of the right at the third party's offering price." *Id.*

The legal meaning of a true right of first refusal involving real estate was described in *Roy* v. *George W. Greene, Inc.*, 404 Mass. 67, 69-71 (1989), *S.C.*, 408 Mass. 721 (1990). Such a right becomes operational when the "owner has decided to accept a third person's outstanding and enforceable offer and the holder of the right has been informed of the details of that offer

and has had a reasonable time to meet it." *Id.* at 71. See *Franklin* v. *Wyllie,* 443 Mass. 187, 195 (2005); *Greenfield Country Estates Tenants Ass'n* v. *Deep,* 423 Mass. 81, 89 (1996) ("On notice of receipt of a bona fide offer from a third party, a right of first refusal ripens into an option to purchase according to [the] terms" of offer). A property owner's obligation under a right of first refusal is not to sell at such a time that the holder of the right may demand (as in option to purchase), or to sell to the holder at a fixed price at such a time as the owner should wish to sell (as in a fixed price right of first refusal), but merely "to provide the holder of the right seasonable disclosure of the terms of any bona fide third-party offer" that is acceptable to the owner. *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp., supra* at 382-383. The prerogative belongs both to the owner of the property, who may decide whether to sell, as well as the holder of the right, who may decide whether to purchase at the price offered by the third party. At the time of a third-party offer that the owner has decided to accept, the right of first refusal ripens into an option to purchase according to the terms of the third-party offer. See *Knott* v. *Racicot,* 442 Mass. 314, 315 n.4 (2004); *Sudbury* v. *Scott,* 439 Mass. 288, 297 (2003); *Greenfield Country Estates Tenants Ass'n* v. *Deep, supra* at 89 n.14. See also *Roy* v. *George W. Greene, Inc., supra* at 70 ("a right of first refusal . . . cannot be exercised before the owner has received a bona fide and enforceable [written] offer from a third party").

The rule against perpetuities is a rule that invalidates interests that vest too remotely. The underlying rationale behind the rule (now hundreds of years old) is classically understood as a means whereby courts could "curb excessive dead-hand control of property through intergenerational transfers" that might render property unmarketable for decades, or longer. Restatement (Third) of Property (Servitudes) § 3.3 comment b, at 427 (2000). See *Certified Corp.* v. *GTE Prods. Corp., supra* at 825; 6 American Law of Property § 24.6, at 22-23 (A.J. Casner ed. 1952); Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638 (1938). Because the holder of a right of first refusal may only choose to purchase property on the same terms as a bona fide offer, if and when the owner decides to sell, there is no power

either to compel an owner to sell the property at an unfavorable price, or to encumber an owner's ability to sell the property for a lengthy period of time. There is no casting of a cloud of uncertainty on the title to the property, and no potential to forestall a sale. Hence, the rule against perpetuities logically should not apply. In our view, this position is better suited for business transactions, such as the one here, in which the right of first refusal was created. See *Childs* v. *Sherman,* 351 Mass. 450, 455 (1966), quoting *Wong* v. *DiGrazia,* 60 Cal. 2d 525, 533-534 (1963) (expressing preference that rule against perpetuities not be applied to commercial agreements "in rigid or remorseless manner").

Revising the position adopted by the Restatement of Property almost sixty years earlier, the ALI now expresses the position that the common-law rule against perpetuities does not apply to a right of first refusal to purchase land. See Restatement (Third) of Property (Servitudes), *supra* at § 3.3, at 425. The Restatement's position is supported by the view expressed by the authors of the 1952 American Law of Property. Section 26.67 of that treatise states that, "[w]hile the rule against perpetuities may technically be applicable [to a preemptive right to purchase property], it ought not to be applied, since the future interest of the pre-emptioner constitutes no impediment to transfer of the property." *Id.* at 511.[7]

The plaintiff cites several cases involving the issue presented here, where a right of first refusal, without a fixed price and purporting to benefit the parties' heirs and assigns, was held to be void under the common-law rule against perpetuities. See *Neustadt* v. *Pearce,* 145 Conn. 403, 405 (1958); *Fallschase Dev. Corp.* v. *Blakey,* 696 So. 2d 833, 837 (Fla. Dist. Ct. App. 1997); *Ferrero Constr. Co.* v. *Dennis Rourke Co.,* 311 Md. 560, 576 (1988); *Coxe* v. *Wyatt,* 83 N.C. App. 131, 134 (1986). We find these cases unpersuasive. In *Ferrero Constr. Co.* v. *Dennis*

---

[7] The preeminent authority on the rule against perpetuities, W. Barton Leach, also was critical of the application of the rule against perpetuities to purchases of land. See Leach, Perpetuities in Perspective: Ending the Rule's Reign of Terror, 65 Harv. L. Rev. 721, 737 (1952). Noting that the rule was formulated to discourage "[e]xcessively long family settlements," Leach observed wryly that "[t]o derive from a rule thus motivated a general concept applicable to commercial transactions is a step of doubtful wisdom." *Id.*

*Rourke Co., supra,* the Court of Appeals of Maryland applied the rule against perpetuities to void a right of first refusal of unlimited duration contained in a commercial agreement to purchase real estate. See *id.* at 575. In doing so, the *Ferraro* court joined what it described as the "great majority of American jurisdictions" that have held rights of first refusal to be property rights subject to the rule against perpetuities. *Id.* at 565. The *Ferraro* court declined to distinguish between an option to purchase and a right of first refusal; observed that "certainty and stability are important values"; and reasoned that prospective purchasers could be dissuaded from investing time and money necessary to make a bona fide offer if there was the possibility that the holder of the right of first refusal would step in and purchase the property. See *id.* at 567, 569, 574. As noted by the dissenting opinion, however, see *id.* at 585 (Cole, J., dissenting), prospective purchasers always take the risk that their bids will be turned down. The dissenting opinion also pointed out that many of the "majority rule" cases cited by the court dealt with rights of first refusal at fixed prices, or rights of first refusal whose terms did not violate the rule against perpetuities, and so were not completely supportive of the court's position. See *id.* at 581-582 & nn. 1 & 2. In any case, a substantial number of jurisdictions have declined to apply the rule against perpetuities to a right of first refusal. See, e.g., *Greenshields* v. *Warren Petroleum Corp.,* 248 F.2d 61, 71 (10th Cir.), cert. denied, 355 U.S. 907 (1957) (right to purchase oil and gas restricts land use in perpetuity, but is presently vested); *Weber* v. *Texas Co.,* 83 F.2d 807, 808 (5th Cir.), cert. denied, 299 U.S. 561 (1936) (rights to purchase oil not within traditional purpose of rule); *Robertson* v. *Murphy,* 510 So. 2d 180, 183 (Ala. 1987) (right to repurchase created conditional fee that was vested from outset and, thus, exempt from rule); *Cambridge Co.* v. *East Slope Inv. Corp.,* 700 P.2d 537, 542-543 (Colo. 1985) (technical application of rule against perpetuities to right of first refusal of condominium units inappropriate); *Gartley* v. *Ricketts,* 107 N.M. 451, 453 (1988) (right of first refusal not future interest and not subject to rule); *Robroy Land Co.* v. *Prather,* 95 Wash. 2d 66, 71 (1980) (rule not applicable to preemptive rights); *Hartnett* v. *Jones,* 629 P.2d 1357, 1363 (Wyo. 1981)

(preemptive right not within policy that rule was designed to uphold).

The rule against perpetuities is not the only judicially created doctrine that historically has limited attempts by property owners to retain control of land by transfers of property interests to future generations. The rule against restraints on alienation "had similar purposes, but [was] more specifically designed to insure that particular assets remained available for commerce." Restatement (Third) of Property (Servitudes), *supra* at § 3.3 comment b, at 427. See *id.* at § 3.4 & comment b, at 440-441 (stating that certain rights of first refusal may be void as unreasonable restraint on alienation); 6 American Law of Property, *supra* at § 26.66 (suggesting that rule against restraints on alienation applies to preemptive options such as right of first refusal). The plaintiff does not set forth any persuasive argument, or point to any facts in the record, that would support the conclusion that the challenged right of first refusal is unenforceable as an unreasonable restraint on alienation. We nonetheless consider the issue briefly.

As has been discussed, a right of first refusal to purchase real estate of the nature considered here works a de minimis restraint on the alienation of property.[8] It arises only when a property owner receives, and is prepared to accept, a bona fide offer and, if the holder of the right chooses not to purchase the property, the owner remains free to sell to the third party. The right involves neither a fixed price nor a long period during which the holder of the right can choose to purchase. Either of the latter limitations would burden the property by discouraging bona fide offers or, alternatively, making an owner unwilling to sell. Unlike an option to purchase at a fixed price, the owner is assured of receiving market value for his property (and thus will not be deterred from improving it or offering it for sale). Nor will potential buyers, knowing that the market value of the property will remain intact, be deterred from purchasing the

---

[8]The issue of unreasonable restraint on alienation was not reached by the judge, who entered summary judgment in favor of the plaintiff entirely on the basis of the rule against perpetuities.

property.[9] In December, 2004, only twenty-three years had elapsed since the creation of the restriction, and there is no claim that the Hayden family does not still have a legitimate interest in retaining familial rights to the property.[10] We conclude that the right of first refusal contained in document no. 284,458 and referenced in the recorded deed to the subject property is neither void under the rule against perpetuities nor a restriction constituting an unreasonable restraint on alienation. The right, in these circumstances, should be given full legal effect.[11]

[9]The defendant concedes that a right of first refusal at a fixed price could effect an unreasonable restraint on alienation.

[10]We caution that there might be a case where, because of passage of time, a reasonable inquiry would not disclose the heirs, assigns, or others who hold the right of first refusal to real estate. In such a case, a court could, on equitable grounds, decline to enforce the right of first refusal, which, in those circumstances, would adversely affect the free alienation of the property and, thus, be unreasonable.

We reject the defendant's argument that a right of first refusal is the type of restrictive covenant covered by G. L. c. 184, § 23, providing, in relevant part, that "[c]onditions or restrictions, unlimited as to time, by which the title or use of real property is affected, shall be limited to the term of thirty years after the date of the deed . . . creating them . . . ." That statute involves land use restrictions, see, e.g., *Brear* v. *Fagan,* 447 Mass. 68, 73-74, 77 (2006); *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.,* 433 Mass. 285, 288 (2001), and does not cover preemptive rights with respect to interests in land, which, as has been stated, are now subject to G. L. c. 184A, § 5. A court might use the thirty-year window imposed by G. L. c. 184, § 23, and G. L. c. 184A, § 5, as a general guide, however, and, if more than thirty years have passed since the creation of a right of first refusal not subject to G. L. c. 184A, § 5, and circumstances otherwise demonstrate a good reason not to enforce the right, then enforcement could be declined on equitable grounds.

[11]The defendant argues that equitable principles of estoppel, or of waiver, should operate to bar the plaintiff's action. The defendant's position focuses on the February 14 letter sent to the defendant's attorney on the plaintiff's behalf, in which the plaintiff's attorney undertook the responsibility of notifying the defendant of the offer and prospective sale of lot 94, and allowing the defendant twenty days in which to assert his right of first refusal. The defendant's estoppel argument would be more persuasive were there in the summary judgment record any (undisputed) evidence of detrimental reliance on the part of the defendant. The defendant's waiver argument rests on the inference that, by his conduct in sending the letter, which, essentially, invited the defendant to exercise his preemptive right of first refusal (which had, at that time, become an option to purchase), the plaintiff relinquished any right to challenge the validity of the defendant's preemptive right to the property. See, e.g., *Dynamic Mach. Works, Inc.* v. *Machine & Elec. Consultants,* 444

3. The order allowing the plaintiff's motion for summary judgment, and the declaration entered in the plaintiff's favor, are vacated. The order denying the defendant's motion for summary judgment is reversed. The defendant's motion for summary judgment is allowed. A new declaration shall enter under G. L. c. 231A, stating that the right of first refusal in issue is valid and enforceable in favor of the defendant. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

Mass. 768, 772-774 (2005). The plaintiff denies that he ever, either expressly or impliedly, conceded the validity of the defendant's purported right. We need not dwell on the factual dispute, however, because it is immaterial to our resolution of this appeal. For reasons stated above, the defendant is entitled to summary judgment as matter of law.