POWER GAS MARKETING
& TRANSMISSION,
INC., Appellant

v.

CABOT OIL & GAS CORPORATION
and Linn Energy, LLC,
Appellees.

Superior Court of Pennsylvania.

Argued Jan. 16, 2008.
Filed March 31, 2008.
Reargument Denied June 12, 2008.

Paul L. Mitchell, Houston, TX, and Erin N. Fischer, Pittsburgh, for appellant.

Robert W. Lambert, Indiana, for Linn, appellee.

Rodger L. Puz, Pittsburgh, for Cabot, appellee.

BEFORE: LALLY–GREEN, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Power Gas Marketing and Transmission, Inc. (Power), appeals *nunc pro tunc* from the February 27, 2007, Order granting Cabot Oil & Gas Corporation (Cabot) and Linn Energy, LLC's (Linn Energy) respective motions for summary judgment and, conversely, denying Power's cross-motion for summary judgment.

¶ 2 On November 5, 1969, Felmont Oil Corporation, Consolidated Gas Supply Corporation, T.W. Phillips Gas and Oil Company, and the Sylvania Corporation executed a Joint Operating Agreement (JOA). Pursuant to the terms of the JOA, each corporate signatory was to contribute oil and natural gas leases and oil and natural gas ownership rights in an area known as the Pineton Prospect, which spans portions of Indiana and Cambria Counties, to a newly formed joint venture.

¶ 3 The stated purpose of the joint venture was "to explore and develop [the contributed] leases and interests for oil and gas." Record, No. 8, Complaint, Exb. A, Recital. Each party to the JOA agreed to share in both the liabilities incurred by the joint venture as well as the ownership of any oil or natural gas excavated in percentages corresponding with the leases and rights each party contributed to the joint venture relative to the entirety of the joint venture's holdings in Pineton Prospect. The parties further agreed that all interests arising under the JOA were assignable; however, the JOA included a preferential purchase rights provision which reads, in pertinent part, as follows:

## 18. PREFERENTIAL RIGHT TO PURCHASE

Should any party desire to sell all or any part of its interests under this contract, or its rights and interests in the Unit Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties.

Record, No. 8, Complaint, Exb. A.

¶ 4 Through a series of assignments executed in the mid-to-late 1990's, appellant Power acquired an interest in the joint venture. On September 1, 2003, appellee Cabot, which also obtained its interest in the joint venture through a series of assignments, conveyed its interest in the joint venture to appellee Linn Energy. At the time of the conveyance, Linn Energy had no pre-existing interest in the joint venture.

¶ 5 On September 27, 2005, Power filed a complaint raising a breach of contract claim against Cabot and raising an intentional interference with contractual rights claim against Linn Energy. The com-

plaint alleged, *inter alia*, Cabot had failed to offer Power the opportunity to purchase Cabot's interest prior to conveying it to Linn Energy and, as such, the September 1, 2003, conveyance breached the JOA preferential purchase rights provision. The complaint sought an order setting aside the transaction and requested compensatory damages.

¶ 6 On August 29, 2006, the pleadings closed. On October 26, 2006, Linn Energy filed a motion for summary judgment contending the rule against perpetuities, codified at 20 Pa.C.S.A. § 6104, **Rule against perpetuities, (b) Void interest; exceptions,**[1] rendered the JOA preferential purchase rights provision unenforceable by operation of law. On November 14, 2006, Cabot filed its own motion for summary judgment echoing Linn Energy's argument, albeit in a more exhaustive fashion. Thereafter, on December 11, 2006, Power filed a cross-motion for summary judgment contending, in relevant part, no material issue of fact existed as to whether it was entitled to the benefit of the JOA preferential purchase rights provision.

¶ 7 On January 16, 2007, the trial court heard oral argument on all three outstanding motions. Shortly thereafter, the court entered the Order subject of this appeal with a corresponding Opinion. On April 24, 2007, the trial court granted Power the right to appeal *nunc pro tunc* and this timely appeal followed.

¶ 8 We begin by defining the parameters of our review:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment. As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion.

---

1. The rule against perpetuities codified in 20 Pa.C.S.A. § 6104, **Rule against perpetuities, (b) Void interests; exceptions,** provides: "Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, any interest not then vested and any interest in members of a class the membership of which is then subject to increase shall be void." The perpetuities period "allowed by footnote continued on next page the common law" is "within twenty-one years of a life in being." *Central Delaware County Authority v. Greyhound Corp.,* 527 Pa. 47, 588 A.2d 485, 489 n. 8 (1991). Power Gas Marketing and Transmission, Inc. (Power) does not allege that any of the enumerated statutory exceptions to the rule against perpetuities are applicable. *See* 20 Pa.C.S.A. §§ 6104(b)(1)-(4).

*Roche v. Ugly Duckling Car Sales, Inc.,* 879 A.2d 785, 789 (Pa.Super.2005), *appeal denied* 587 Pa. 732, 901 A.2d 499 (2006), *quoting Regscan, Inc. v. Con–Way Transp. Servs.,* 875 A.2d 332, 336 (Pa.Super.2005) (additional citation omitted).

¶ 9 Power asks that this Court to consider whether the JOA preferential purchase rights provision is subject to the rule against perpetuities. Appellant's brief at 4. Before we consider this issue, it is necessary for purposes of our analysis to determine whether the JOA preferential purchase rights provision is a right of first refusal or an option. This Court recently defined a right of first refusal, otherwise known as the right to preemption, as follows:

> A right of first refusal constitutes a promise to offer the res of the right to the promisee for such consideration as the promisor determines to accept on the basis of an offer from a third party before accepting the offer of the third party. A right of first refusal does not require the promisor to offer the res at all. The right of first refusal merely requires that before the promisor accepts an offer of a third party, [the promisor] must offer the res to the promisee of the right for the consideration [the promisor] is willing to accept from the third party.

*Delaware River Preservation Co. v. Miskin,* 923 A.2d 1177, 1181 (Pa.Super.2007), *quoting CBS, Inc. v. Capital Cities Communications, Inc.,* 301 Pa.Super. 557, 448 A.2d 48, 56 (1982) (emphasis omitted); *see also Gateway Trading Co. v. Children's Hosp. of Pittsburgh,* 438 Pa. 329, 265 A.2d 115, 119 (Pa.1970), *citing* Corbin, **Contracts** at 863 (1952); **Black's Law Dictionary** at 1350 (8th ed. 2004).

¶ 10 The JOA preferential purchase rights provision grants the parties to the JOA the right to purchase "for such con-sideration as the promisor determines to accept on the basis of an offer from a third party" and "does not require the promisor to offer the res at all." *Delaware River, supra* at 1181; *see also* Record, No. 8, Complaint, Exb. A, at ¶ 18 ("The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell. . . ."). The JOA preferential purchase rights provision can only be defined as a right of first refusal. *Cf. Villoresi v. Femminella,* 856 A.2d 78, 81 (Pa.Super.2004), *appeal denied* 582 Pa. 719, 872 A.2d 1200 (2005), *quoting Barnes v. Rea,* 219 Pa. 279, 68 A. 836, 838 (1908) ("[A]n option is a unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract *inter partes* in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee."); *Phoenixville, Valley Forge, & Strafford Elec. Ry. Co.'s Appeal,* 70 Pa.Super. 391, 395 (1918) (defining an option as a "unilateral agreement, containing the terms and conditions upon which the optionor agrees to sell and convey his land, not yet ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other."); *see also* **Black's Law Dictionary** at 1127 (8th ed. 2004).

¶ 11 Appellees, Cabot and Linn Energy, both anticipating that the JOA preferential purchase rights provision would be defined as a right of first refusal, rely on this Court's decision in *Estate of Royer v. Wineland Equipment, Inc.,* 444 Pa.Super. 276, 663 A.2d 780 (1995), for the proposition that "rights of first refusal are subject to the [rule against perpetuities]." Cabot brief at 7, *accord* Linn Energy brief at 10 (internal quotation marks omitted). Appellees' analysis misses its mark.

¶ 12 The first flaw in appellees' analysis is that it erroneously assumes this Commonwealth's law is clear on the issue of whether rights of first refusal are subject to the rule against perpetuities. *Royer* is the only case in which an appellate court of this Commonwealth has concluded a right defined as a "right of first refusal"[2] is subject to the rule against perpetuities. Other cases, however, contain language which could conceivably allow us to reach the opposite conclusion. In *Southeastern Transportation Authority v. Philadelphia Transportation Co.*, 426 Pa. 377, 233 A.2d 15 (1967) (*SEPTA*), our Supreme Court stated: "A transaction which is exclusively contractual is not subject to the rule against perpetuities." *Id.* at 20, *quoting* **Restatement (First) of Property**, § 401, *accord Caplan v. Pittsburgh*, 375 Pa. 268, 100 A.2d 380, 382 (1953), *citing* John Chipman Gray, **The Rule Against Perpetuities** § 329, at 360 (4th ed. 1942). In *Central Delaware County Authority v. Greyhound Corp.*, 527 Pa. 47, 588 A.2d 485 (1991), our Supreme Court, in expounding upon the statement of law in *SEPTA* set forth above, cited the **Restatement (First) of Property** § 401, Comment b, for the following definition:

"A transaction is 'exclusively contractual,' within the meaning of that term as used in this Restatement, when, and only when, it concerns no specific land or thing other than land." *Id.* at 489–490.

¶ 13 Over 150 years ago, our Supreme Court reached the following conclusion with respect to what have subsequently come to be defined as rights of first refusal: "Where a lessor has stipulated with his lessee, in the lease, that when the land was offered for sale, the first offer shall be made to the lessee upon terms as favorable as are offered to any other person, this stipulation gives to the lessee no title to or interest in the land, and creates only a personal obligation." *Elder v. Robinson*, 19 Pa. 364, 366 (1852). This language seemingly defines a right of first refusal as being "exclusively contractual." *SEPTA, supra* at 20 (citation omitted). This statement of the law was later cited with approval by our Supreme Court in *Driebe v. Fort Penn Realty Co.*, 331 Pa. 314, 200 A. 62 (1938). The problem with relying on either *Elder* or *Driebe* to resolve this matter however, is that neither case involved the rule against perpetuities.[3] Further-

2. The "right of first refusal" at issue in *Estate of Royer v. Wineland Equipment, Inc.*, 444 Pa.Super. 276, 663 A.2d 780 (1995), was, in actuality and in want of a more sophisticated term, a hybrid right of first refusal-option. The grantor in *Royer* included the following language in a deed conveying a farm to his grantee: "[T]he Grantors herein agree that if they decide to sell the remainder of the farm, containing an estimated Twenty (20) acres, more or less, together with a house, barn and outbuildings, that they will give the first opportunity and privilege to the Grantee herein to purchase the same at a fixed sum of Six Thousand ($6,000) Dollars." *Id.* at 781–782. This language vested the promisor/optionor with the right to decide whether the *res* should be conveyed. *See e.g., Delaware River Preservation Co. v. Miskin*, 923 A.2d 1177, 1181 (Pa.Super.2007), *quoting CBS, Inc. v. Capital Cities Communications, Inc.*, 301

Pa.Super. 557, 448 A.2d 48, 56 (1982). This language further indicates, however, that the promisee/optionee had a role in deciding the terms upon which any eventual conveyance would occur. *See Phoenixville, Valley Forge, & Strafford Elec. Ry. Co.'s Appeal*, 70 Pa.Super. 391, 395 (1918). The language at issue in *Royer*, therefore, created an interest having characteristics of both a right of first refusal and an option.

3. For the sake of clarity, we note that both *Elder v. Robinson*, 19 Pa. 364 (1852), and *Driebe v. Fort Penn Realty Co.*, 331 Pa. 314, 200 A. 62 (1938), were decided prior to the 1947 enactment of 20 Pa.C.S.A. § 6104, **Rule against perpetuities,** *supra*. The rule against perpetuities was a creature of common law when these cases were decided, not statute.

more, it is unclear whether Pennsylvania common law recognized a distinction between the application of the rule against perpetuities to rights created in property and its non-application to rights created in contract when *Elder* and *Driebe* were handed down.

¶ 14 The second flaw in appellees' analysis is that the "right of first refusal" at issue in *Royer* attached to a tract of land specifically defined within the context of the transaction at issue—a farm and the structures situated upon the farm. The situation at hand is nowhere near as straight forward. The JOA preferential purchase rights provision creates "interests under this contract, or . . . rights and interests in the Unit Area." Record, No. 8, Complaint, Exb. A, at ¶ 18. The term "interest" seemingly refers to "oil and gas interests," which the JOA defines as "unleased fee and oil & gas interests in tracts of land lying within the Unit Area which are owned by parties to this agreement." *Id.* at ¶ 1(4). The JOA defines the term "Unit Area" as "all of the lands, oil and gas leasehold interests and oil and gas interests intended to be developed and operated for oil and gas purposes under this agreement," with such interests being described in Exhibit "A." *Id.* at (5). Exhibit A, however, establishes each original party to the JOA donated leases to the agreement. There is no indication any of the parties contributed property owned in fee simple or by joint tenancy into the JOA. As a result, the subject interest at issue attaches solely to oil and gas leases.

¶ 15 Thus, pursuant to the preceding analysis, we reject appellees' contention that *Royer* is dispositive. We are left with a complicated question—whether the rule against perpetuities applies to a right of first refusal which grants the promisee the first opportunity to purchase a percentage interest of an aggregation of ever-chang-

ing leases when each lease in the larger aggregate encumbers a portion of the same underlying estate. Both parties seem to be in agreement that the resolution of this question is dependent upon the answers to two subsidiary queries—first, does the JOA preferential purchase rights provision create an "impress on land" such that it is not merely a right arising from operation of contract; *see Central Delaware County Authority, supra* at 491, *quoting Barton v. Thaw,* 246 Pa. 348, 92 A. 312, 316 (1914); and, second, whether the rule against perpetuities should be "remorselessly" applied in the context of a commercial transaction, *id.* at 490, *citing Barton, supra* at 314.

¶ 16 Appellees argue Pennsylvania law recognizes oil and gas leases as being estates in land; as a result of this recognition, appellees argue, the JOA preferential purchase rights provision creates an interest subject to the rule against perpetuities. Linn Energy brief at 5, *citing Lesnick v. Chartiers Natural Gas Co.,* 889 A.2d 1282 (Pa.Super.2005); *Duquesne Natural Gas Co. v. Fefolt,* 203 Pa.Super. 102, 198 A.2d 608, 610 (1964). Appellees point out that every lease pooled into the JOA during the life of the joint venture encumbered oil and gas rights to a contiguous reserve under a specific tract of land, the Pineton Prospect. Thus, according to appellees, while the joint venture's right to occupy and drill on various portions of the surface of Pineton Prospect may have changed, the aggregation of leases constitutes an estate in land because each lease in the larger aggregate encumbered portions of the same estate.

¶ 17 Appellees further argue that once it is determined an interest is subject to the rule against perpetuities, the rule must be "remorselessly applied" irrespective of any countervailing public policy considerations. *See e.g.,* Cabot brief at 16–17. In support

of this proposition, appellees point to the following passage in *Barton, supra*, which subsequently was quoted with approval in *Central Delaware County Authority, supra:*

> The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied. We must be careful not to strain the law so as to avoid this rule. It is founded upon a sound principle of public policy and should be rigidly enforced.

*Id.* at 490, *citing Barton, supra* at 314 (internal citations and quotation marks omitted).

¶ 18 Power counters that the JOA preferential purchase rights provision does not create an interest in an estate in land within the rule against perpetuities but, rather, creates an interest in non-specific property—namely, an ever-changing pool of leases. As such, Power contends the right created by the JOA preferential purchase rights provision is one that arises solely from contract. Appellant's brief at 16–17, *citing SEPTA, supra* at 19–20. Power contends that strong public policy considerations militate against subjecting the JOA preferential purchase rights provision to the rule against perpetuities. Power further maintains that subjecting the provision to the rule against perpetuities would adversely impact this Commonwealth's oil and gas industry.

¶ 19 When the JOA was drafted, the corporate signatories each received a percentage interest in the aggregated pool of leases contributed to the newly formed joint venture. Each specific lease in the larger aggregate encumbered oil and gas rights under approximately 19,000 acres, which converts to roughly 30 square miles (although there is no indication these interests lied under contiguous land). The JOA does not require that the leases initially contributed to the joint venture must be continued or renewed. To the contrary, the JOA allows for these leases to expire and allows for leases to be surrendered. Record, No. 8, Complaint, Exb. A, at ¶¶ 23–24. Over time, the joint venture came to own leases additional to those which were initially contributed. In 1970, for example, the JOA was modified to include a fifth party—Delta Drilling Company—which pooled 14 new leases of oil and gas rights under approximately 767 acres of Pineton Prospect as a pre-condition to entering into the joint venture. Record, No. 45, Appendix to Power's Response to Motion for Summary Judgment of Defendant Linn Energy Holdings, LLC, Exb. B, Modification of Operation Agreement, at Exb. A–1. To complicate matters further, the original corporate signatories are no longer party to the agreement and new parties have joined the JOA through a series of assignments; with each assignment, the respective percentage interests of the parties in the joint venture, and, by correlation, the percentage interests of the parties in the aggregation of leases owned by the joint venture changed as well.

¶ 20 The interests created by the JOA preferential purchase rights provision have changed over the life of the joint venture such that it is impossible to point to a "specific [tract] of land or thing other than land" to which the JOA preferential purchase rights provision attaches. *Central Delaware County Authority, supra* at 489–490, *citing* **Restatement (First) of Property** § 401, Comment b ("A transaction is 'exclusively contractual,' within the meaning of that term as used in this Restate-

ment, when, and only when, it concerns no specific land or thing other than land."). Yes, it is true each lease which has been, or currently is, in the pool encumbers portions of a specific estate, namely the Pineton Prospect oil and gas reserve. Yet, it is also true the JOA preferential purchase rights provision does not afford any party to the joint venture the right to purchase this specific oil and gas estate or, for that matter, the right to purchase a specific lease or specific leases held by the joint venture. Rather, the language of the JOA and the course of dealing between the various parties that have been signatories to the JOA establish the interest created by the JOA preferential purchase rights provision is the right to purchase a percentage interest in an ever-changing aggregation of leases, wherein each lease contains varying terms. Record, No. 8, Exb. A, Complaint at ¶¶ 1, 18; Exb. A.

¶ 21 An analysis of our precedent is illustrative of the distinction drawn. In *SEPTA* our Supreme Court refused to apply the rule against perpetuities to an option held by the City of Philadelphia to purchase "all the property, leaseholds and franchises of the [Pennsylvania Transportation Company]." *Id.* at 18. The Court concluded "the option is not an impress on land but is solely a contractual right not within the rule against perpetuities." *Id.* at 19–20, *citing Philadelphia v. Philadelphia Transp. Co.,* 386 Pa. 231, 126 A.2d 132 (1956).

¶ 22 In *Central Delaware County Authority, supra,* our Supreme Court concluded an option to a deeded "tract of land" was subject to the rule against perpetuities. *Id.* at 486–487. In reaching its conclusion, the *Central Delaware County Authority* Court distinguished *SEPTA* and noted, in relevant part, that the option at issue in *SEPTA* "did not fetter *specific* property" but, rather, attached to a body

of property composed of constituent parts that had, or could be, changed. *Id.* at 489–490 (emphasis in original), *citing* **Restatement (First) of Property** § 401, Comment b. The *Central Delaware County Authority* Court noted the body of property subject to the option in *SEPTA* was ever-changing and that the optionor alienated specific items of property from the larger *corpus* originally subject to the option without regard to the optionee's interest. *Id.* at 490 n. 9, *quoting SEPTA v. Philadelphia Transp. Co.,* No. 971, Slip Op. at 63 (Del.Cty.Ct.Comm.Pls.1966) ("[N]one of [the optionor's] assets, real or personal, is charged with the option. Both [the optionor's] President and its Comptroller testified that [the optionor] often sold particular pieces of land, as well as personalty such as buses and other equipment, without regard to the [optionee's] option to purchase.").

¶ 23 The interest created by the JOA preferential rights purchase provision is analogous to the interest at issue in *SEPTA* inasmuch as it is an interest that originally attached to a body of property composed of constituent parts which the parties realized could, and which ultimately did, change during the life of the joint venture. The subject interest does not "concern ... *specific* land or thing[s] other than land." *Central Delaware County Authority, supra* at 489–490, *citing* **Restatement (First) of Property** § 401, Comment b. The subject interest concerns a percentage share in a pool of ever-changing leases. Hence, the subject interest is "exclusively contractual." *SEPTA, supra* at 20, *quoting* **Restatement (First) of Property,** § 401; *see also Caplan, supra* at 382, *citing* John Chipman Gray, **The Rule Against Perpetuities** § 329, at 360 (4th ed. 1942).

¶ 24 Looking at the issue through a wider lens, we also question whether, in

the first instance, rights of first refusal such as the JOA preferential purchase rights provision ever concern propertied estates such that they should be brought within the rule against perpetuities. *See Driebe, supra* at 63; *Elder, supra* at 366; **Restatement (Third) of Property (Servitudes)** § 3.3, Comment a, illus. 1, **Rule Against Perpetuities Inapplicable;** *but cf. Royer, supra* at 782. A true right of first refusal does not vest the promisee with any ability to control when the *res* subject to the right will be alienated or under what terms such alienation will occur.[4] A right of first refusal places no restriction on the promisor's ability to alienate the *res* at market value. Thus, a right of first refusal is neither akin to an option which by its very nature prevents the optionor from freely alienating the property subject to the option, nor is it akin to a trust condition that prohibits a beneficiary from freely alienating the *corpus* of a trust. Rather, when a right of first refusal is at issue it is the *owner* of the property—the promisor—who decides when and how to alienate the *res* and not a third party, such as an optionee or settlor. *Delaware River, supra* at 1181, *cf. Villoresi, supra* at 81. Given the lack of privileges and incidents the holder of a right of first refusal has over the *res*, it is difficult to argue that a right of first refusal ever concerns a propertied estate.

¶ 25 The underlying and subsidiary policy query also favors Power's position. The rule against perpetuities is an archaic device best suited to an ancient time when

4. Courts which have reached the conclusion that rights of first refusal are not subject to the rule against perpetuities have pointed to the lack of control a promisee has in deciding whether and under what terms the *res* of the right will be alienated as support for their respective conclusions. *See e.g., Weber v. Texas Co.*, 83 F.2d 807, 808 (5th Cir.1936), *writ of certiorari denied* 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936) ("[A right of first refusal] is not an exclusive option to the lessee to buy at a fixed price which may be exercised at some remote time beyond the limit of the rule against perpetuities, meanwhile forestalling alienation.... This does not restrain alienation by the lessor.... The lessee cannot prevent a sale."); *Robertson v. Murphy*, 510 So.2d 180, 182 (Ala.1987) ("[Preemptive rights] do not inhibit alienation by the other party, but simply provide that there is a preferred right to buy at the market price if the other party desires to sell. The holder of the preemptive right cannot prevent the sale, and he must act promptly if the other party desires to sell.") (citation omitted); *Cambridge Co. v. East Slope Inv. Corp.*, 700 P.2d 537, 541–542 (Co.1985) (*en banc*) ("Moreover, unlike an option giving the holder the power to force a sale, the preemption here cannot be exercised unless the owner desires to sell; at that time, the only effect of the preemption is to change the identity of the buyer. In short, both the current and future owners of the

[*res*] subject to the preemptive right hold a title that is freely alienable at the full market price."); *Bortolotti v. Hayden*, 449 Mass. 193, 866 N.E.2d 882, 889 (2007) ("Because the holder of a right of first refusal may only choose to purchase property on the same terms as a bona fide offer, if and when the owner decides to sell, there is no power either to compel an owner to sell the property at an unfavorable price, or to encumber an owner's ability to sell the property for a lengthy period of time. There is no casting of a cloud of uncertainty on the title to the property, and no potential to forestall a sale. Hence, the rule against perpetuities logically should not apply."); *Beets v. Tyler*, 365 Mo. 895, 290 S.W.2d 76, 81 (1956) ("[The right of first refusal] amounts to no more than a right in [the] interested parties to buy the property at the market price whenever the [promisor] decided to sell. [The footnote continued on next page promisees] could not force [promisor] to sell and [promisor] could not force [promisees to] buy."); *Robroy Land Co. v. Prather*, 95 Wash.2d 66, 622 P.2d 367, 370 (1980) ("The holder of a right of first refusal has far less of an interest in land than the holder of an ordinary option. The preemptioner has no power or right to affect the property in any way until its owner expresses a desire and willingness to sell."); *Hartnett v. Jones*, 629 P.2d 1357, 1361 (Wyo.1981).

concerns different from those in today's marketplace prevailed. In the twelfth and thirteenth centuries, feudal tenants began to advocate for the free alienation of fee simple estates without having to first seek permission from their feudal grantors. Charles J. Reid, Jr., **The Seventeenth Century Revolution in the English Land Law,** 43 Clev. St. L.Rev. 221, 262 (1995). By 1290, the principle of free alienation was established and codified in a statute known as *Quia Emptores. Id.* at 263, *citing* Jesse Dukeminier & James E. Krier, **Property** 153 (2nd ed. 1988). Nonetheless, by the late 1500's the uninhibited right of landowners to freely alienate property gave rise to concerns about the ability of feudal families to exercise ceaseless power through the creation of "perpetuities." *Id.* at 266, *citing Chudleigh's Case,* 1 Co. Rep. 113b (1589–1595), 76 Eng. Rep. 261. By the late 1600's, the struggle between landowners who wanted the unrestricted right to alienate their property and judges who argued that a real estate market satisfactory to meet rising demand needed to be maintained cried out for compromise. *Id.* at 261–262; *see also* Jesse Dukeminier & James E. Krier, **Property** 302 (5th ed. 2002).

¶ 26 In response to this historical impetus, the rule against perpetuities was created to ensure expansive fiefdoms would not be perpetuated *ad infinitum* through generations of English feudal families. *See The Duke of Norfolk's Case,* 3 Ch. Chas. 1, 22 Eng. Rep. 931 (1681). The rule is a compromise inasmuch as it allows landowners to exercise some control over the post-mortem disposition of their property while also ensuring this control is of limited duration. The rule functions to ensure expansive tracts of land will not be permanently removed from the stream of commerce. *See e.g., Weber v. Texas,* 83 F.2d 807, 808 (5th Cir.1936), *writ of certiorari denied* 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936) ("The underlying reason for and purpose of the rule [against perpetuities] is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint on alienation, which is regarded at common law as a public evil."), *citing Barton, supra* at 312 (additional citations omitted).

¶ 27 While we recognize that our Supreme Court stated the rule against perpetuities should be "remorselessly" applied, the rationale for such application was the Court's reliance on the common law notion that "[The rule] is founded upon a sound principle of public policy." *Central Delaware County Authority, supra* at 490, *citing Barton, supra* at 314. The General Assembly, nevertheless, has eliminated the rule against perpetuities for any interest created subsequent to January 1, 2007. *See* 20 Pa.C.S.A. § 6104(d), **Applicability,** *added by* 2006 Pa. Legis. Serv. 98. Given our General Assembly's recent elimination of the rule as it pertains to interests created after January 1, 2007, it is difficult to argue our General Assembly, the ultimate arbiters of the soundness of this Commonwealth's policy, still believes the rule is based "upon a sound principle of public policy." *See generally, Pennsylvania Nat'l Mut. Cas. Co. v. Black,* 591 Pa. 221, 916 A.2d 569, 578 (2007) ("Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.") (citations omitted).

¶ 28 Furthermore, even if we assume *arguendo* that the policies underlying the rule against perpetuities are still laudable, we question whether the policies advanced by the rule are at issue in this case. To reiterate, a right of first refusal does not vest the promisee with any ability to con-

trol the *res;* rather, it is the *owner* of the property—the promisor—who decides when and how to alienate the *res.* There is no policy of which we are aware that disfavors allowing a property owner, even a corporate property owner, to own property for an unlimited duration of time. Even if our legal system countenanced such a peculiar policy, the JOA preferential purchase rights provision attaches to an interest that has "built-in duration," meaning that the pool of aggregated leases encumber portions of an oil and gas estate that will, given enough time, be depleted. *Producers Oil Co. v. Gore,* 1980 OK 62, 610 P.2d 772, 774 (1980).

¶ 29 We also see merit in Power's contention that subjecting the JOA preferential purchase rights provision to the rule against perpetuities would adversely impact this Commonwealth's oil and gas industry.[5] The JOA is drafted on a model form agreement promulgated by the American Association of Petroleum Landmen known as Model Form 610. John R. Reeves, **The Development of the Model Form Operating Agreement: An Interpretive Accounting,** 54 Okla. L.Rev. 211, 215 (2001), *quoting Exxon Corp. v. Crosby–Mississippi Resources,* 775 F.Supp. 969, 971–972 (S.D.Miss.1991) (subsequent appellate history omitted). The JOA preferential purchase rights provision encourages investment in oil and gas exploration by performing two vital functions. First, the provision guarantees that parties who bear the initial risk in exploring and developing projects operated by Form 610 joint ventures have the first opportunity to acquire a greater interest in the joint venture before a third party who did not share in this initial risk is given such an opportunity. *Questa Energy Corp. v. Vantage Point Energy,* 887 S.W.2d 217, 222 (Tex. App.1994), *citing* Harlan Albright, **Preferential Right Provisions and their Applicability to Oil and Gas Instruments,** 32 Sw. L.J. 803, 804 (1978); Gary B. Conine, **Property Provisions of the Operating Agreement—Interpretation, Validity, and Enforceability,** 19 Tex. Tech. L.Rev. 1263, 1317 (1988). Second, the provision ensures that parties to the joint venture can exclude undesirable partners who may not have the requisite financial resources or engineering expertise to ensure the continued vitality of the joint venture. *Id.*

¶ 30 Subjecting the JOA preferential purchase rights to the rule against perpetuities would provide a disincentive for investment in Form 610 joint ventures and, in addition, would lead to instability in existing joint ventures. If this were to occur, this Commonwealth's oil and gas industry would suffer and, moreover, the rule against perpetuities would be used to accomplish exactly what it was created to defeat—the creation of artificial restrictions which impede the introduction of assets and capital into the stream of commerce. *Weber, supra* at 808, *citing Barton, supra* at 312. Such a construction is impermissible in that it would be both absurd and unreasonable. 1 Pa.

5. The jurisdictions which have considered the precise question before us, i.e., whether the JOA preferential purchase rights provision is subject to the rule against perpetuities, have all concluded it is not. *Larson Operating Co. v. Petroleum, Inc.,* 32 Kan.App.2d 460, 84 P.3d 626, 633 (2004); *Murphy Exploration & Prod. Co. v. Sun Operating Ltd. P'ship,* 747 So.2d 260, 263 (Miss.1999); *Producers Oil Co. v. Gore,* 1980 OK 62, 610 P.2d 772, 776 (1980). These cases all employ different rationales and all deal with different variations of the rule against perpetuities. Nonetheless, in each case the court recognized, either explicitly or implicitly, applying the footnote continued on next page rule against perpetuities to the JOA preferential purchase rights provision would amount to flawed economic policy.

C.S.A. § 1922(1), **Presumptions in ascertaining legislative intent.**

¶ 31 In conclusion, the JOA preferential purchase rights provision creates an exclusively contractual right and does not function as "an impress of land" nor does it "fetter *specific* property" as those phrases have been construed by our precedent. *Central Delaware County Authority, supra* at 489–490; *SEPTA, supra* at 19–20. Our General Assembly's recent prospective elimination of the rule against perpetuities indicates it felt the policies that prompted the creation of the rule are no longer laudable. Consequently, we need not strain to "remorselessly" apply the rule to the JOA preferential purchase rights provision. *Central Delaware County Authority, supra* at 490. Indeed, if we were to apply the rule in this instance, such application would accomplish exactly what the rule against perpetuities was intended to defeat. Such a result would unquestionably be premised on an absurd and unreasonable construction of the rule. 1 Pa.C.S.A. § 1922(1), *supra.* Accordingly, the trial court's conclusion that the JOA preferential purchase rights provision is subject to the rule against perpetuities constitutes a reversible error of law. *Roche, supra* at 789.

¶ 32 By virtue of our disposition today, we need not consider the second and third issues raised in appellant's brief—namely, whether the trial court miscalculated the perpetuities period and whether appellees should be estopped from invoking the rule against perpetuities. These issues are rendered moot.

¶ 33 Order reversed. Case remanded for further proceedings consistent with this Opinion.

¶ 34 Jurisdiction relinquished.